**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **JUSTIN DEWAYNE WENCKENS, TCDJ NO. 02477197,** *Plaintiff,* | § § § § | |
| **v.** | § | **PE:25-CV-00005-DC-DF** |
| **BRYAN COLLIER, Individual Capacity Only, et al.,** *Defendants.* | § § § § § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT are Defendants[1] Bryan Collier, Bobby Lumpkin, Benny Bundy, Cris Love, Manuel Enriquez, Luiz R. Perez, Jeremiah Flores, Raul A. Ortega, and Ken Paxton's ("collectively, "Defendants") Motions to Partially Dismiss under Rules 12(b)(1) and 12(b)(6). (Docs. 20, 23). Because the same arguments are raised in both Motions, the Court will consider them concurrently.[2] This matter is before the undersigned Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** Defendants' Motions to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Docs. 20, 23).

1. Defendants Marvin Dunbar, Brian Patrick, Angela Chevalier, and Eric Nichols originally joined in these Motions but were later voluntarily dismissed from this case. (Doc. 45).

2. Defendants filed separate Motions because there was a delay in Defendants Chevalier and Ortega consenting to the Office of the Attorney General of Texas' representation. (Doc. 21).

## BACKGROUND

This case involves multiple alleged violations of constitutional rights. (Doc. 1). Plaintiff Justin Dewayne Wenckens ("Wenckens"), proceeding *pro se*, is an inmate under the custody of the Texas Department of Criminal Justice. *Id.* at 5. Wenckens' factual allegations are as follows.

In March 2024, Wenckens alleges he was assaulted by a group of correctional officers in an attack initiated by Defendant Enriquez. *Id.* at 20. Wenckens had previously engaged in a verbal dispute with Defendant Enriquez over the lights in the correctional unit. *Id.* at 18–19. After Wenckens walked outside the unit following the dispute, Defendant Enriquez left his post and struck Wenckens in the face with a large set of five to seven brass keys that had been fashioned as brass knuckles. *Id.* at 20.

Wenckens claims there were four other correctional officers present (Defendants Flores, Perez, Ortega, and Doe[3]) who initially rushed inmates away from the scene before joining Enriquez in the attack. *Id.* at 20–21. With Wenckens on the ground and bleeding from multiple strikes to the head, the other officers placed him in handcuffs while one officer laid on top of him, causing him to lose consciousness as the others continued to hit and push his face into the ground. *Id.* at 21. Wenckens eventually regained consciousness to slaps from Defendant Flores, as Defendant Enriquez yelled that he had "kicked his fucking ass." *Id.*

3. Wenckens claims there was a fifth officer involved in the attack that he cannot yet identify. (Doc. 1 at 3). He uses "Defendant Doe" as a placeholder. *Id.*

Following the attack, Wenckens was walked to the administrative building where he made statements documenting the attack and his injuries. *Id.* at 21–22. He was then taken by stretcher to the prison's medical unit, which decided to transport him by ambulance to Pecos County Memorial Hospital. *Id.* at 22. Wenckens suffered "a concussion, blunt force trauma causing large lacerations on his forehead and scalp, two black eyes, a rotator cuff injury, swollen right knee, as well as several contusions on his back and legs, . . . a 1-2-inch-long scar on his forehead," and "severe and significant emotional and physiological distress, including but not limited to increased anxiety and insomnia." *Id.*

Wenckens' wife ("Mrs. Wenckens") was made aware of the incident and received a call from another inmate regarding what had happened. *Id.* at 23. She emailed the prison warden, Defendant Bundy, requesting the Office of the Inspector General ("OIG") conduct a full investigation into the incident. *Id.* Over the following days, she sent follow-up emails asking for status updates and requesting that all video recordings from the incident be saved and filed. *Id.* at 24. Months later, she received a copy of the TCDJ Incident Offense Report, TCDJ OIG narrative, and TDCJ OIG supplement. (Docs. 1 at 29; 1-1 at 27–30). The documents, each dated September 6, claim Wenckens admitted to starting the aggression and that inmates at the scene refused to assign blame or provide written statements. (Doc. 1-1 at 30).

As Mrs. Wenckens was making requests to prison officials and the OIG from outside the prison, Wenckens was filing grievances within the prison against the officers, to no avail. (Doc. 1 at 25–26). One of his grievances was screened out and

returned on the same day as "not grievable," with the reasoning that all uses of force are handled by the OIG. *Id.* at 26. Wenckens was visited by multiple OIG investigators; he claims one of the investigators stated there was another version of the OIG report consistent with Wenckens' version of the incident, but that it was not made a part of the record. *Id.* at 32. To date, he has not received a hearing regarding the incident. *Id.* at 27.

In November, Mrs. Wenckens received a basic information report in response to another public information request she filed with the TDCJ. (Docs. 1 at 27; 1-1 at 43). The report stated the OIG declined to open an investigation due to "inmate request closure." (Doc. 1-1 at 43, 45). Wenckens claims he never requested that the investigation be closed. (Doc. 1 at 32). The report also stated Wenckens initiated the force by spontaneously throwing a cup of coffee in Enriquez's face. (Doc. 1-1 at 43). Disciplinary charges (Level I 3.1 Assaulting an Officer with a Weapon resulting in a Non-Serious Injury or no Injury) were filed against Wenckens for this incident. (Docs. 1 at 27; 1-1 at 43). He claims to have never received notice of this charge before the public information request. (Doc. 1 at 27).

Wenckens filed this action under 42 U.S.C. § 1983 and state law on January 27, 2025. (Doc. 1). Defendants filed their Motions to Dismiss on May 12 and May 20, 2025, raising similar arguments involving qualified immunity. (Docs. 20, 23). Defendants Eric Nichols, Brian Patrick, Angela Chevalier, and Marvin Dunbar were voluntarily dismissed from the case. (Doc. 45). Wenckens filed his Response to Defendants' Motions to Dismiss on August 5, to which Defendants filed their Reply on August 15. (Docs. 44, 46). Accordingly, this matter is ripe for adjudication.

## LEGAL STANDARD

Rule 12(b)(1) allows for the dismissal of a complaint based on the absence of subject–matter jurisdiction. FED. R. CIV. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Lack of subject–matter jurisdiction may be found based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Ramming*, 281 F.3d at 161. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Id.* "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate if a complaint offers merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 572 U.S. 1087 (2014) (quoting *Ashcroft*, 556 U.S. at 678). When reviewing a 12(b)(6) motion, the court accepts all facts as true and construes them in the light most favorable to plaintiff. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993).

## Discussion

Wenckens brings claims under federal law for (1) excessive force against Defendants Enriquez and Flores,[4] (2) bystander liability against Defendants Ortega and Perez, (3) supervisor liability for the excessive force claim against Defendants Collier, Lumpkin, Love, and Bundy (4) § 1983 conspiracy against all Defendants, (5) conditions of confinement against Defendant Bundy, and (6) failure to train against Defendants Collier, Lumpkin, Bundy, Love, and Paxton. (Doc. 1). Wenkens also brings state law aggravated assault and negligence claims. *Id.* Finally, in his Response, Wenckens requests a Martinez report and to amend his Complaint. (Doc. 44).

### I. Qualified Immunity

"Qualified immunity protects officers from suit unless their conduct violates a clearly established statutory or constitutional right." *Hayes v. City of Dallas*, No. 23-CV-2271, 2025 WL 1211268, at *4 (N.D. Tex. Apr. 25, 2024) (quoting *Edmiston v. Borrego*, 75 F.4th 551, 558 (5th Cir. 2023)). The burden is on the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *Id.* (citing *Joseph ex rel Est. of Joseph v. Bartlett*, 981 F.3d 319, 329–30 (5th Cir. 2020)). The plaintiff must show (1) the official violated a statutory or constitutional right and (2) the right was clearly established at the time of the challenged conduct. *Id.* (citing *Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021)).

4. Defendants also move to dismiss the excessive force claim as to Defendants Perez and Ortega, but the Court construes Wenckens Complaint as only bringing excessive force claims against Defendants Enriquez and Flores and bystander liability claims against Defendants Perez and Ortega. (Doc. 1 at 33–36).

**A. Excessive Force Claim Against Defendants Enriquez and Flores**

First, Wenckens brings an excessive use of force claim under 42 U.S.C. § 1983 against Defendants Enriquez and Flores, citing violations of the Eighth and Fourteenth Amendments. (Doc. 1 at 33). The Court will only consider the Eighth Amendment, as "[a]fter conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.' Any protection that 'substantive due process' affords prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Defendants concede Wenckens sufficiently pleaded a claim against Defendant Enriquez but move to dismiss the claim against Defendant Flores. (Doc. 20 at 13). The Court finds Wenckens sufficiently pleaded an excessive force claim against Defendant Flores as to overcome qualified immunity.

*i. Violation of Constitutional Right*

To establish a claim for excessive force under the Eighth Amendment, Wenckens must assert that the "force was not applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm." *Cardona v. Taylor*, 828 F. App'x 198, 201 (2020) (per curiam) (citations and quotations omitted). "The amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed." *Bourne v. Gunnels*, 921 F.3d 484, 491 (2019) (quoting *Ikerd v. Blair*, 101 F.3d 430, 4434 (5th Cir. 1996)) (alteration in original). For this analysis, courts look at (1) the extent of the injury suffered, (2) the need for the application of

force, (3) the relationship between that need and the amount of force used. *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)).

Wenckens pleads an injury sufficiently. Wenckens claims to have suffered "a concussion, blunt force trauma causing large lacerations on his forehead and scalp, two black eyes, a rotator cuff injury, swollen right knee, as well as several contusions on his back and legs, . . . a 1-2-inch-long scar on his forehead," and "severe and significant emotional and physiological distress, including but not limited to increased anxiety and insomnia." (Doc. 1 at 22). He was transported by ambulance to the Pecos County Memorial Hospital for treatment. *Id.*

Wenckens also sufficiently alleges that there was no need for force. Wenckens identifies Defendant Flores as an "Officer Defendant." (Doc. 1 at 11). Wenckens alleges that after Defendant Enriquez's initial attack, the "Officer Defendants . . . placed him in handcuffs behind his back" and continued beating him. *Id.* at 21. Wenckens claims he was on the ground and nonresistant for the duration of this attack. (Doc. 1 at 34). "Courts in the Fifth Circuit and throughout the country have found the use of force against a suspect who is already physically restrained and not actively resisting officers' commands is objectively unreasonable." *Callaway v. City of Austin*, No. 15-CV-00103, 2015 WL 4323174, at *13 (W.D. Tex. July 14, 2015) (citations omitted); *Bourne*, 921 F.3d at 492.

Wenckens also sufficiently pleads Defendants used an excessive amount of force in a situation where force was entirely unnecessary, given that he was restrained and nonresistant. *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022). Wenckens claims that,

after being handcuffed, the Officer Defendants "continued to hit and push his face into the ground. The lacerations on Plaintiff's face were bleeding so much that the dirt below him turned into mud." (Doc. 1 at 21). Wenckens claims he awoke to Flores slapping his face as Defendant Enriquez yelled that he had "[k]icked his fucking ass." *Id.* Accordingly, the Court finds Wenckens has pleaded a constitutional violation.

*ii. Identification of Flores*

Defendants argue—regardless of whether a constitutional violation was established—Wenckens fails to identify Defendant Flores' involvement in the attack. (Doc. 20 at 12). "To be liable under Section 1983, an officer 'must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is casually connected to the constitutional violation.'" *Acosta v. Williamson County*, No. 21-CV-00615, 2022 WL 757248, at *11 (W.D. Tex. Mar. 11, 2022) (quoting *Turner v. Lieutenant Driver*, 848 F.3d 678, 695–96 (5th Cir. 2017)). Personal involvement requires something more than mere presence at the scene where the alleged constitutional violation took place. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008). Instead, the "plaintiff must demonstrate an officer's 'overt personal participation' in the violation of his own rights. . . ." *Id.* (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).

Wenckens sufficiently connects Flores to the alleged constitutional violation. Though Wenckens concedes "he doesn't know the exact involvement of each Defendant," he claims Flores participated in the attack and later slapped him until he regained consciousness. (Doc. 1 at 21). Defendants cite to *Acosta*, but the plaintiff there failed to connect the defendants at all to the alleged constitutional violation. (Doc. 20 at

12) (citing 2022 WL 757248, at *11) ("[Plaintiff] pleads no allegations . . . that [the defendants] were personally involved or casually connected to the alleged assault"). Defendants also cite to *Ramos*, but in that case the plaintiff's complaint identified two groups of defendants who had used different amounts of force. (Doc. 20 at 12) (citing *Ramos v. Erwin*, 723 F. Supp. 3d 529, 539 (S.D. Tex. 2024)). The court therefore split up the excessive force claim into two claims against each group according to the force they were alleged to have used. *Ramos*, 723 F. Supp. at 539.

Here, Wenckens specifically identifies Flores as having participated in the attack. In his Complaint, Defendant Flores is defined as an "Officer Defendant. . . ." (Doc. 1 at 11, 13). Wenckens alleges each of the "Officer Defendants continued to hit and push his face into the ground" after he was restrained. *Id.* at 21. Accepting Wenckens' allegations as true, he need not plead anything more. *See Meadours v. Ermel*, 483 F.3d 417, 422 n.3 (5th Cir. 2007) ("Separate consideration does not require courts to conduct a separate analysis for each officer in those cases where their actions are materially indistinguishable, it merely requires them to *consider* each officer's actions.") (emphasis in original).

*Greene v. DeMoss* is on point here. No. 21-30044, 2022 WL 3716201, at *4 (5th Cir. Aug. 29, 2022) (per curiam). In *Greene*, the Fifth Circuit affirmed the lower court's denial of qualified immunity where the officers were alleged to have each "beat, smothered, and choked" the plaintiff's husband after he had been "pinned . . . down on the ground" and was "begging for the officers to stop[.]" *Id.* The Court rejected the officers' argument that the plaintiff had "failed to plead her excessive force claims with

sufficient specificity" as to each officer, reasoning that "a good claim against one defendant d[oes] not become inadequate simply because a co-defendant was alleged to have committed the same wrongful acts." *Id.* at *3 (quoting *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018)); *Smith v. Caldwell Parish Det. Ctr.*, No. 4247131, 2023 WL 4247131, at *5 (W.D. La. June 9, 2023) (citing *Greene*, 2022 WL 3716201, at *3) ("Plaintiff claims that 'they hit him repeatedly while his hands behind his back. He does not definitively state which officer . . . beat him. The Court should retain this claim against [each officer]."). The same reasoning applies here. *Greene*, 2022 WL 3716201, at *3 ("[I]dentical allegations do not necessarily defeat an otherwise sufficient pleading.").

Even if Wenckens had not specifically identified Defendant Flores' role in the attack, Defendants "take the principle requiring a plaintiff to identify individual conduct attributable to each public official too far." *Huff v. Refugio Cnty. Sheriff's Dept.*, No. 13-CV-00032, 2013 WL 5574901, at *3 (S.D. Tex. Oct. 9, 2013) (finding "allegations that two individuals had direct involvement in applying excessive force . . . more than sufficient at the pleading stage" even where the plaintiff could not yet assign responsibility between them); *see Stapleton v. Lozano*, 125 F.4th 743, 751 (5th Cir. 2025) (quoting *Huff*, 2013 WL 5574901, at *3) ("The plaintiff in *Huff* sufficiently pleaded an excessive force claim against the officers because he alleged an injury resulting from both officers' 'direct involvement in applying excessive force.'"). At the motion to dismiss stage, the plaintiff is not responsible for pleading facts "peculiarly within the knowledge of defendants"—here, the exact extent of force used by each officer after

Wenckens was rendered unconscious. *Morgan v. Hubert*, 335 F. App'x 466, 472 (5th Cir. 2009) (per curiam) (quoting *Schultea v. Wood*, 47 F.3d 1427, (5th Cir. 1995)); *Potter v. Rachel*, No. 22-CV-452, 2023 WL 5156669, at *4 (E.D. Tex. Feb. 24, 2023). Further particularity as to which defendant did what during the alleged attack is an issue of fact[5] and not implicated at the motion to dismiss stage. *Callaway*, 2015 WL 4323174, at *9 (citing FED. R. CIV. P. 8); *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) ("[A]ll of the named officers were in the vicinity at some point when [the plaintiff] alleges he was beaten. The extent of each officer's participation is thus a classic factual dispute to be resolved by the fact finder.").

The Fifth Circuit has consistently not required such specificity at the motion to dismiss stage. *Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992) (reversing dismissal of a prisoner suit despite the "involvement of the named defendants" being uncertain because "the defendants are not completely faceless" and the plaintiff could likely identify their specific involvement with discovery); (Doc. 44) ("Plaintiff can identify each defendant through facial recognition."). In *Bias v. Lundy*, for example, the Court vacated the lower court's dismissal of an excessive force claim against two deputies who had each been involved in the attack on the plaintiff, even where the specific involvement of each deputy had not yet been particularized. 188 F. App'x 248, 250 (5th Cir. 2007) (per curiam) (finding claim that "one deputy got on top of him, put a gun

5. "[T]he proposition that each defendant's conduct must be considered individually [for qualified immunity analysis], is not to the contrary. There is a difference between a material issue of fact as to which defendant did what, and an issue of law requiring that each defendant's conduct be analyzed separately." *Callaway*, 2015 WL 4323174, at *9 n.7. (citing *Meadours*, 482 F.3d at 422) (citations omitted).

to his head and made a statement that he ought to kill him" as supporting excessive force claim against two named deputies).

Other Circuits have followed the same approach. *Fazica v. Jordan*, 926 F.3d 283, 292 (6th Cir. 2019) ("[W]here a plaintiff who was unable to identify clearly which officers committed specific acts during the incident produces evidence that places an individual defendant in a small group of officers that committed allegedly unconstitutional acts . . . the plaintiff's claim against that defendant may survive summary judgment."); *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (reversing "district court's finding that [the plaintiff] could not bring excessive force claims against any of the officers because he could not specify which one of them attacked him"). To hold otherwise would be to say that all public officials need to do to violate a person's constitutional rights is blindfold them.

The Fifth Circuit's holding in *Carswell v. Camp* regarding qualified immunity does not change this result. 54 F.4th 307 (5th Cir. 2022). There, the Fifth Circuit "only h[eld] that where the pleadings are insufficient to overcome [qualified immunity], the district court *must* grant the motion to dismiss without the benefit of pre-dismissal discovery. Similarly, where the pleadings are sufficient to overcome [qualified immunity], the district court *must* deny the motion to dismiss without the benefit of pre-dismissal discovery." *Id.* at 312. The Court said nothing about changing the pleading standard to overcome qualified immunity. *Id.* ("Today we *only* hold. . . .") (emphasis added); *id.* at 314 ("[A]ll agree the district court ha[d] not yet ruled on that question [of qualified immunity]. We decline to do so in the first instance.").

This Court acknowledges *Navejas v. Jaso*, cited by Defendants, reached a different conclusion in interpreting *Carswell*. 700 F. Supp. 3d 532, 537 (W.D. Tex. 2023). In *Navejas*, the court claimed the pleading standard for overcoming qualified immunity of "determin[ing] whether the alleged actions—regardless of which defendant took them—would state a claim for a constitutional violation" was abrogated by *Carswell*. *Id.* (citing 54 F.4th at 312). The *Navejas* court equated this pleading standard to the "careful procedure" discussed in *Carswell*, in which district courts would formerly defer ruling on qualified immunity if the plaintiff pleaded sufficient factual material.[6] *Id.*

However, the deferral procedure analyzed in *Carswell* and the pleading standard for claims involving claims of unparticularized allegations of excessive force against a group of assailants are distinct concepts. For years, courts across this Circuit have applied this pleading standard to rule on, not defer, qualified immunity at the motion to dismiss stage. This was true in *Huff*. 2013 WL 5574901, at *3 (holding "excessive force claim brought against [unidentified officers]" "if proven, demonstrate[ed] a violation of clearly established rights" and "therefore survive[d] the Rule 12 stage"). It was true in *Khansari v. City of Houston*. 14 F. Supp. 3d 842, 860–61 (S.D. Tex. 2014) (denying motion to dismiss because the plaintiff's allegations of "extensive injuries from having been tasered [from unknown officers] are not only sufficient to . . . plead[] a claim . . . against

6. Under the "careful procedure," district courts would defer ruling on qualified immunity and order limited discovery if further factual development was necessary to determine the availability of that defense. *Carswell*, 54 F.4th at 311 (citations and quotations omitted). The district court would first have to find that the plaintiff pleaded facts which, if true, would overcome the defense of qualified immunity. *Id.* If it still found itself unable to rule on the immunity defense without further clarification of the facts, the district court could order discovery narrowly tailored to uncover only those facts needed to rule on the immunity claim. *Id.*

the officers who tasered [the plaintiff] but, if true, are also sufficient to overcome those officers' assertions of qualified immunity."). It has even been true in cases that have reached the summary judgment stage. *Callaway*, 2015 WL 4323174, at *9 (citing *Sanchez v. Fraley*, 376 F. App'x 449, 454–55 (5th Cir. 2010)) ("The argument that a plaintiff has failed to state a claim for excessive force simply because the witness could not see which officer did what fails at the summary judgment stage."); *Estate of Potter v. Bexar Cnty. Hosp. Dist.*, No. 03-ca-55, 2006 WL 2252742, at *36, *46, *58–59 (W.D. Tex. May 3, 2004) (denying officers' motion for summary judgment on excessive force claim where plaintiff could not identify which officer did what during a takedown).

The Court also finds the approach in *Navejas*, where the court justified its dismissal on the assailant officer's identity being unknown, is incompatible with Supreme Court precedent such as *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*. 403 U.S. 388 (1971). "The significant body of case law authorizing Section 1983 and/or *Bivens* claims against 'John Doe' defendants makes such an argument impossible to sustain."[7] *Crisp v. Dutton*, No. 15-CV-0431, 2015 WL 7076483, at *6 (W.D. Tex. Nov. 12, 2015) (citing *Six Unknown Named Agents*, 403 U.S. 388 ("allowing plaintiff to assert Fourth Amendment violations against unknown individual federal agents")). The Court therefore finds Wenckens' has pleaded his excessive force claim against Flores with adequate specificity.

---

7. One of the factors that motivated the passage of § 1983 was that "[c]ombinations, darker than the night that hides them . . . ha[d] gone unwhipped of justice." *Monroe v. Pape*, 365 U.S. 167, 175 (1961) (quoting Cong. Globe, 42d Cong. 1st Sess., App. 166–67).

*iii. Clearly Established Right*

The Court next considers the second qualified immunity prong of whether "defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Griggs v. Brewer*, 841 F.3d 308, 312–13 (5th Cir. 2016) (citation omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citations and quotations omitted). The Court finds Wenckens pleaded a clearly established constitutional right.

As discussed above, Wenckens claims Defendant Flores subjected him to excessive force while he was held down, in handcuffs, and did "not resist or defend himself in any way." (Doc. 1 at 21). "[T]here is a well-developed body of case law in the Fifth Circuit specifically holding that the use of physical force against a restrained, passively resisting, or non-resistant suspect is a constitutional violation." *Callaway*, 2015 WL 4323174, at *13 (citing *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) (finding an allegation of choking that was not in response to any resistance or aggression by suspect in custody was sufficient to assert a constitutional violation); *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008) (finding a constitutional violation where officers "forcefully slammed [plaintiff's] face into a vehicle when [plaintiff] was handcuffed and subdued")) (other citations omitted).

This case law extends to the Eighth Amendment. *Kitchen v. Dallas County*, 759 F.3d 468, 479 (5th Cir. 2014) (ruling with "[t]he Third, Eleventh, and Eighth Circuits . . . that violent acts committed against a restrained inmate may give rise to a constitutional

violation”). This law has been established for many years, giving Defendants sufficient notice at the time of the incident. *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) (“[I]n 2009 . . . it was well-established, in sufficiently similar situations, that officers may not ‘use gratuitous force against a prisoner who has already been subdued . . . [or] incapacitated.”) (citations and quotations omitted). In light of this clear and long-established case law,[8] the Court **RECOMMENDS** Defendants’ Motion to Dismiss be **DENIED** as to Wenckens’ excessive force claim against Defendant Flores. (Doc. 20 at 12).

### B. Supervisory Liability for Excessive Force

Wenckens also brings a § 1983 supervisor liability claim relating to the alleged excessive force against Bryan Collier, Bobby Lumpkin, Cris Love, and Benny Bundy (collectively, “Executive Defendants”). (Doc. 1 at 35). Wenckens alleges Executive Defendants approved and authorized the actions of the officers by their policy and/or custom of acceptance. *Id.*

Supervisory officials cannot be held vicariously liable for their subordinates’ unconstitutional actions. *Mouille v. City of Live Oak,* 977 F.2d 924, 929 (5th Cir. 1992) (citing *Monell v. Dep’t of Soc. Servs.*, 436 U.S. 658, 691–95 (1978); *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985) (per curiam)). Supervisory officials only may be held liable if: (1) they affirmatively participate in acts that cause constitutional deprivation;

8. Wenckens does not cite to this body of law. But the Court “needn’t limit our analysis to the cases cited by Plaintiffs[.]” *Joseph*, 981 F.3d at 335.

or (2) implement unconstitutional policies that causally result in plaintiff's injury. *Id.* (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)).

Wenckens fails to plead either basis for liability. Wenckens does not specifically allege any participation of Executive Defendants in the attack, offering only conclusory statements that they authorized and approved it. (Doc. 1 at 35). This is insufficient. *Sanchez v. Griffis*, 569 F. Supp. 3d 496, 514 (W.D. Tex. 2021) (rejecting supervisory liability claim because the plaintiff "ha[d] not demonstrated that [the defendants] were personally involved in any of the alleged constitutional violations"). Wenckens likewise fails to point to a specific policy or widespread practice that was the moving force of the alleged constitutional violations. *Id.*; (Doc. 1 at 35). Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED** as to Wenckens' supervisor liability for excessive force claim against Defendants Bryan Collier, Bobby Lumpkin, Cris Love, and Benny Bundy. (Doc. 20 at 14).

### C. Bystander Liability

Next, Wenckens brings a bystander liability claim under § 1983 against Defendants Perez, Ortega, and Doe. Defendants assert qualified immunity and move to dismiss the claim against Perez and Ortega. (Docs. 20 at 15; 23 at 6–7). Like with Wenckens' excessive force claim, the Court considers whether Defendant Perez and Defendant Ortega violated a statutory or constitutional right and whether the right was clearly established at the time of the challenged conduct. *Roque*, 993 F.3d at 331. The Court finds Wenckens sufficiently pleads a bystander liability claim as to overcome qualified immunity.

*i. Constitutional Violation*

To state a bystander liability claim, Wenckens must show that (1) the officer knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act. *Cardona v. Taylor*, 828 F. App'x 198, 202–03 (2020) (per curiam) (citing *Kitchen*, 759 F.3d at 480). In his Complaint, Wenckens asserts Defendants Perez and Ortega "stood idly by as spectators of Defendant Enriquez's attack" and that they "had every opportunity to intervene and prevent harm" but "chose not to act. . . ." (Doc. 1 at 36). He further claims "[t]here was no physical or other barrier preventing" Defendants Perez and Ortega "from stopping Defendant Enriquez or providing safety to Plaintiff." *Id.*

The Fifth Circuit's holding in *Cardona* is on point here. 828 F. App'x at 202–03. "Because [the Court] determined that" Wenckens "sufficiently stated a claim for relief regarding the officers' use of excessive force, and because he alleges that other officers, . . . were present . . . but failed to intervene, [the Court] conclude[s] that he has stated a claim for relief on this ground as well." *Id.* Unlike *Cardona*, the Court need not even rely on its earlier excessive force finding given all Parties agree Wenckens pleaded an excessive force claim against Defendant Enriquez. (Doc. 20 at 13).

Courts also reject bystander liability claims if the officers were merely present for but did not acquiesce to the alleged constitutional violation. *Joseph*, 981 F.3d at 343. "[A]cquiescence may be shown by evidence that the defendant stood by . . . and encouraged the use of force." *Martinez v. Bowers*, No. 23-768, 2024 WL 1703086, at *5 (S.D. Tex. Apr. 19, 2024) (citing *Phillips v. Whittington*, No. 20-30731, 2022 WL 797418, at

*9 (5th Cir. Mar. 14, 2022) (per curiam)). Here, the officers are alleged to have not only encouraged the use of force, but to have restrained Wenckens and assisted during the attack. (Doc. 1 at 21); *Greene v. DeMoss*, No. 20-CV-00578, 2020 WL 7755690, at *9 (W.D. La. Dec. 11, 2020) ("[B]ecause each officer allegedly participated in the use of excessive force against [plaintiff], this means that each officer necessarily was close enough to . . . intervene[] to protect [plaintiff] from the actions of the other officers."), *R & R adopted by* 2020 WL 7755655 (W.D. La. Dec. 29, 2020), *aff'd*, No. 21-30044, 2022 WL 3716201 (5th Cir. Aug. 29, 2022). Accordingly, the Court finds Wenckens sufficiently pleaded a constitutional violation.

*ii. Clearly Established Right*

The Court moves to the second prong of the qualified immunity analysis. Defendants argue that for this prong to be satisfied, there must be "authority which shows that a Correctional Officer is liable where: the inmate is assaulted without provocation in an area of a prison populated with numerous other inmates, the Officer chooses to first remove those inmates from the area, and then the Officer proceeds to report the incident and take the inmate to receive medical treatment." (Doc. 23 at 12–13). Though courts must not conduct the qualified immunity analysis at "a high level of generality," Defendants' characterization of the case law required here is too narrow. *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (citations and quotations omitted).

Just as there is a well-established body of case law regarding excessive use of force on a restrained subject, "[t]here is an equally well-developed body of case law holding that an officer who witnesses such excessive force and does not act to prevent it

is liable for this omission under Section 1983." *Callaway*, 2015 WL 4323174, at *14 (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995); *Harris v. Chanclor*, 537 F.2d 203, 205–06 (5th Cir. 1976)). This has also long been true in the Eighth Amendment context. *Harris*, 537 F.2d at 206. The Court therefore **RECOMMENDS** Defendants' Motions to Dismiss be **DENIED** as to Wenckens' bystander liability claim against Defendants Perez and Ortega. (Docs. 20 at 15; 23 at 18).

### D. Conspiracy Claim Against All Defendants

Wenckens also brings a § 1983 conspiracy claim against all Defendants, alleging they each conspired to cover up the officers' excessive force. (Doc. 1 at 37). He connects his conspiracy claim to the Eighth and Fourteenth Amendments. *Id.* To state a conspiracy claim under § 1983, Wenckens must allege facts to support "(1) the existence of a conspiracy involving state action" and "(2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)).

Before reaching whether Wenckens established a conspiracy, we must evaluate whether a conspiracy to cover up—as opposed to commit—a constitutional violation is independently actionable. Courts often treat these claims as involving the denial of the right of access to the courts. *See Cervantez v. Love*, No. 22-CV-150, 2024 WL 2967336, at *16 (N.D. Tex. June 12, 2024). "Denial-of-access claims take one of two forms: forward-looking claims alleging 'that systematic official action frustrates a plaintiff . . . in preparing and filing suits at the present time,' and backwards-looking claims alleging

that an official action has caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or loss of an opportunity to seek some form of relief." *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (quoting *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002)).

Wenckens does not plead either type of denial-of-access claim. Forward-looking claims usually "involve blockades to someone's ability to actually file their case in a court, such as filing fees imposed on indigent persons, not processing an inmate's mail to and from a court, or not allowing a prisoner to access a law library." *Cervantez*, 2024 WL 2967336, at *16 (citing *Christopher*, 536 U.S. at 413; *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988)). Wenckens' Complaint does not indicate he is being impeded from filing here. (Doc. 1). Wenckens also cannot assert a backwards-looking claim, as he fails to establish a remedy that is not otherwise available in another suit that may yet be brought. *Waller*, 922 F.3d at 602. Therefore, Wenckens fails to plead a denial-of-access claim.

To the extent Wenckens attempts to bring a conspiracy claim for falsified charges, it is also insufficient. The Fifth Circuit has "recognized a substantive due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Traylor v. Yorka*, No. 22-10783, 2024 WL 209444, at *4 (5th Cir. Jan. 19, 2024) (per curiam) (citations and quotations omitted). Wenckens claims Defendants filed a disciplinary charge against him with a falsified story that Wenckens was the initial aggressor to cover up the officers' alleged use of excessive force. (Doc. 1 at 24, 43). Even so, "[a] claim that a prisoner was 'improperly charged

with things he did not do,' standing alone, does not state a due process claim." *Harris v. Smith*, 482 F. App'x 929, 930 (5th Cir. 2012) (per curiam) (quoting *Collins v. King*, 743 F.2d 248, 253 (5th Cir. 1984); *see also Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) ("[T]he interest of prisoners in disciplinary procedures is not included in that 'liberty' protected by the Fourteenth Amendment."). The Court therefore **RECOMMENDS** Defendants' Motions to Dismiss be **GRANTED** as to Wenckens' conspiracy claim against all Defendants. (Docs. 20 at 16; 23 at 15).

### E. Conditions of Confinement

Next, Wenckens brings a conditions of confinement claim under § 1983 against Defendant Bundy, citing only the "blind spots in their unit['s]" surveillance. (Doc. 1 at 38). "[T]he Constitution does not require TCDJ to videotape everything that occurs. . . ." *Moore v. Nixon*, No. 16-CV-119, 2017 WL 11476340, at *5 (N.D. Tex. Apr. 25, 2017) (citing *Suiters v. Cockrell*, No. 02-CV-0579, 2003 WL 21448578, at *2 (N.D. Tex. Mar. 25, 2003)); *see Hyatt v. Thomas*, 843 F.3d 172, 179 (5th Cir. 2016) (holding that "ultimately imperfect" video surveillance with blind spot that had partially led to inmate's suicide did not violate the Eighth Amendment). Wenckens does not point to any case law indicating otherwise. (Doc. 1). The Court therefore **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED** as to Wenckens' conditions of confinement claim. (Doc. 20 at 18).

### F. Failure to Discipline, Supervise, or Train

Wenckens also brings a § 1983 claim against Defendants Bryan Collier, Bobby Lumpkin, Benny Bundy, Cris Love, and Ken Paxton for failure to discipline, supervise,

or train. (Doc. 1 at 38). "[C]ulpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To successfully plead a claim for failure to train, "a plaintiff must show that (1) the supervisor failed to train the officers involved, (2) that failure caused a constitutional violation, and (3) the failure constituted deliberate indifference." *Thompson ex rel. Neveah T. v. Martinez*, 789 F. Supp. 491, 534 (W.D. Tex. 2025) (citing *Jason v. Tanner*, 938 F.3d 191, 196 (5th Cir. 2019)). In his Complaint, Wenckens merely recites the elements of the cause of action with conclusory statements and therefore does not provide sufficient facts to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Wenckens pleads insufficient facts as to the first element, stating only that "defendants failed to appropriately hire, train, assign, discipline, and supervise staff. . . ." (Doc. 1 at 39). "A plaintiff cannot merely contend that there is insufficient training without any specific facts to support that claim." *Cervantez*, 2024 WL 2967336, at *14 (citing *Henderson v. Harris County*, 51 F.4th 125, 131 (5th Cir. 2022)). Similarly, for the second element, Wenckens pleads only that "[a] casual connection existed between the failure to supervise or train and the violation of the Plaintiff's rights. . . ." (Doc. 1 at 39). Wenckens provides no further facts demonstrating why a causal link exists. (Docs. 1, 44). "A defendant cannot be held liable based on general allegations that an injury could have been prevented if employees had received better or additional training." *Woods v. Collier*, No. 23-1643, 2024 WL 1315890, at *3 (S.D. Tex. Mar. 27, 2024) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).

Finally, the Court finds Wenckens failed to establish deliberate indifference. Deliberate indifference "is a rigorous standard, mandating allegations the supervisor disregarded known or obvious consequences of his actions or inactions." *Rivens-Baker v. Riley*, No. 22-CV-01167, 2024 WL 1173045, at *9 (W.D. Tex. Feb. 15, 2024) (citing *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010)). Although Wenckens points to one other similar pending case involving Defendant Enriquez, the Court finds this as-of-yet undecided case insufficient to demonstrate the "pattern of violations" necessary to establish Defendants' deliberate indifference to known or obvious risks. *Mcgee v. Collier*, No. 22-CA-767, 2023 WL 5505923, at *3 (W.D. Tex. Aug. 11, 2023) (citing *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001)). The Court therefore **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED** as to Wenckens' failure to train claim against Bryan Collier, Bobby Lumpkin, Benny Bundy, Cris Love, and Ken Paxton. (Doc. 20 at 19).

## II. State Law Claims

Wenckens also brings two state law claims. First, Wenckens brings a claim against Defendant Enriquez for aggravated assault under the Texas Penal Code. (Doc. 1 at 41) ("[T]hese actions constituted aggravated assault under state law Tex. Pen. Code § 22.02"). But "the Texas Penal Code does not create a private cause of action" because "[c]riminal statutes are not enforced by civil plaintiffs." *Mathis v. DCR Mortg. III Sub, I, LLC*, 952 F. Supp. 2d 828, 836 (W.D. Tex. 2013) (citation and quotations omitted). This claim is therefore not actionable.

Second, Wenckens brings a negligence claim against all Defendants for breaching their duty to follow their procedures and policies and for not keeping Wenckens safe from injury. (Doc. 1 at 41). His allegations are limited to two paragraphs, and do not specify any policy, procedure, or concrete legal duty Defendants breached. *Id.* This is insufficient. The Court therefore **RECOMMENDS** Defendants' Motions to Dismiss be **GRANTED** as to Wenckens' aggravated assault and negligence claims. (Docs. 20 at 23, 24; 23 at 19).

### III. Wenckens' Request for a *Martinez* Report

In his Response, Wenckens requests that the Court order Defendants to file a *Martinez* report regarding the allegations in his Complaint. (Doc. 44 at 11–12). "A *Martinez* report is produced as a result of prison officials' investigating the prisoner's complaints and compiling an administrative record that acts like an affidavit to aid the district court in screening the complaint." *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022). The Court has already screened Wenckens' Complaint and allowed it to proceed. (Doc. 8). Therefore, ordering a *Martinez* report at this stage would be improper. The Court therefore **RECOMMENDS** Wenckens' request for a *Martinez* report be **DENIED**. (Doc. 44 at 11).

### IV. Wenckens' Request to Amend His Complaint

Wenckens also requests leave to amend his Complaint if the Court finds it in any way deficient. (Doc. 44 at 16). As discussed previously, the Court finds Wenckens' supervisor liability, conspiracy, conditions of confinement, failure to train, aggravated assault, and negligence claims deficient.

The Fifth Circuit has instructed that leave to amend should be freely given unless there would be "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment." *Clark v. Dep't of Pub. Safety and Corr.*, 141 F.4th 653, 662 (5th Cir. 2025) (citations omitted). The Court finds it would likely be appropriate to grant Wenckens leave to amend his Complaint in regard to his supervisor liability, conspiracy, conditions of confinement, failure to train, and negligence claims. Given that the Texas Penal Code does not create a private cause of action, any amendment would be futile.

Even so, the Court finds Wenckens' request would better be stated as a separate motion that "give[s] the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaints defects." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (citing *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016)). "If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." *Id.* (citing *Mckinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002)). Accordingly, the Court **RECOMMENDS** Wenckens' request for leave be **DENIED WITHOUT PREJUDICE**. (Doc. 44 at 16).

## CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, the Court **RECOMMENDS** Defendants' Motions to Dismiss be **DENIED** as to Wenckens' claims of excessive force against Defendant Flores

and bystander liability against Defendants Ortega and Perez. (Docs. 20 at 12, 15; 23 at 18). The Court further **RECOMMENDS** Defendants' Motions to Dismiss be **GRANTED** as to Wenckens' conspiracy, conditions of confinement, failure to train, aggravated assault, and negligence claims. (Docs. 20, 23).

Additionally, the Court **RECOMMENDS** Wenckens' request for a *Martinez* report be **DENIED**. (Doc. 44 at 11). Finally, the Court **RECOMMENDS** Wenckens' request for leave to amend his Complaint be **DENIED WITHOUT PREJUDICE**. (Doc. 44 at 16).

SIGNED this 12th day of November, 2025.

DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation **by certified mail, return receipt requested**. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).