**In the United States District Court
for the Western District of Texas
Pecos Division**

| | | |
|---|---|---|
| Justin Dewayne Wenckens, | § | |
| (TDCJ No. 02477197), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civ. Action No. 4:25–cv–5–DC–DF |
| | § | |
| Manuel Enriquez, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**<u>Defendants Enriquez, Perez, Ortega, and Flores's Motion for Summary Judgment</u>**

**Table of Contents**

Table of Authorities                                                                                    4

Defendants Enriquez, Perez, Ortega, and Flores's Motion for Summary Judgment            6

I.      Statement of the Case                                                                       6

II.     Evidence                                                                                    7

III.    Statement of Facts                                                                          8

IV.     Standard of Review                                                                         11

V.      Argument                                                                                   12

     A.    Wenckens has failed to show a constitutional violation for excessive force because the force used against him was intended to restore discipline after he refused to comply with orders, threw hot coffee in Enriquez's face, punched Enriquez in the face multiple times, and resisted the application of hand restraints.            12

          1.    Although Wenckens's injury was more than *de minimis*, his allegations regarding the nature and extent of his injury are implausible.          13

          2.    Wenckens's own actions created the need for the force used.         15

          3.    The force used was proportional to Wenckens's misconduct.          16

          4.    Wenckens's disruptive behavior plainly posed a perceivable threat to prison operations.           17

          5.    The force used stopped as soon as Wenckens stopped resisting, and the treatment for his laceration required only glue and no further medication.          17

          6.    The core judicial inquiry reveals that Defendants used force against Wenckens in a good-faith effort to restore discipline.          18

     B.    Wenckens cannot maintain a claim for bystander liability absent an underlying constitutional violation or personal involvement.           19

     C.    Defendants are entitled to qualified immunity because Wenckens lacked a clearly established right to refuse to comply with orders, throw hot coffee in Enriquez's face, punch Enriquez in the face multiple times, and resist the application of hand restraints.           20

VI.    Prayer                                                                22

Certificate of Conference                                                    24

Certificate of Service                                                       24

## Table of Authorities

**Case Law**                                                                                       **Pages**

*Bargher v. White*,                                                                                      12
    928 F.3d 439 (5th Cir. 2019)

*Byrd v. Harrell*,                                                                                    11–12
    48 F.4th 343 (5th Cir. 2022)

*City of Escondido, Cal. v. Emmons*,                                                                     21
    586 U.S. 38 (2019)

*Cowart v. Erwin*,                                                                                       12
    837 F.3d 444 (5th Cir. 2016)

*District of Columbia v. Wesby*,                                                                         20
    583 U.S. 48 (2018)

*Foxworth v. Khoshdel*,                                                                                  14
    No. 4:07–cv–3944, 2009 WL 3255270 (S.D. Tex. Sept. 28, 2009)

*Freeman v. Sims*,                                                                                       17
    558 F. App'x 412 (5th Cir. 2014)

*Hudson v. McMillian*,                                                                                   12
    503 U.S. 1 (1992)

*Kayser v. Caspari*,                                                                                     14
    16 F.3d 280 (8th Cir. 1994)

*Keller v. Fleming*,                                                                                     21
    952 F.3d 216 (5th Cir. 2020)

*Lewis v. Greenwood Motor Lines, Inc.*,                                                                  11
    No. 22–10758, 2023 WL 2810881 (5th Cir. Apr. 6, 2023)

*Mandawala v. Baptist Sch. of Health Professions*,                                                    11–12
    No. 23–50258, 2024 WL 1461943 (5th Cir. Apr. 4, 2024)

*McClure v. Foster*,                                                                                     14
    No. 5:10–cv–78, 2011 WL 665819 (E.D. Tex. Jan. 7, 2011), *report adopted*, 2011 WL
    941442 (E.D. Tex. Feb. 16, 2011), *aff'd*, 465 F. App'x 373 (5th Cir. 2012)

*Minix v. Blevins*,                                                                                          16
         No. 6:06–cv–306, 2007 WL 1217883 (E.D. Tex. Apr. 23, 2007)

*Pearson v. Callahan*,                                                                                       20
         555 U.S. 223 (2009)

*Ramirez v. Killian*,                                                                                    20–21
         113 F.4th 415 (5th Cir. 2024)

*Robles v. Glenn*,                                                                                           14
         No. 9:06–cv–256, 2007 WL 1655335 (E.D. Tex. June 5, 2007)

*Schneider v. Kaelin*,                                                                                       16
         No. 2:12–cv–233, 2013 WL 1561015 (S.D. Tex. Apr. 9, 2013), *aff'd*, 569 F. App'x 277
         (5th Cir. 2014)

*Schneider v. Kaelin*,                                                                                       17
         569 F. App'x 277 (5th Cir. 2014)

*Soto v. Dickey*,                                                                                            16
         744 F.2d 1260 (7th Cir. 1984)

*Turner v. Moffett*,                                                                                         14
         No. 3:12–cv–220, 2013 WL 5214070 (S.D. Tex. Sept. 17, 2013)

**Statutes**

42 U.S.C. § 1983                                                                                          7, 19

**Rules**

Fed. R. Civ. P. 56(a)                                                                                     6, 11

**In the United States District Court
for the Western District of Texas
Pecos Division**

| | | |
|---|---|---|
| Justin Dewayne Wenckens, | § | |
| (TDCJ No. 02477197), | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civ. Action No. 4:25–cv–5–DC–DF |
| | § | |
| Manuel Enriquez, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**Defendants Enriquez, Perez, Ortega, and Flores's Motion for Summary Judgment**

Defendants Manuel Enriquez, Luis Perez, Raul Ortega, and Jeremiah Flores move for summary judgment in their favor on all claims against them. Fed. R. Civ. P. 56(a).

I.    **Statement of the Case**

On January 27, 2025, Wenckens filed his original complaint *pro se* and *in forma pauperis*. (ECF Nos. 1–2, 4). On February 14, 2025, the Court *sua sponte* dismissed the official-capacity claims against the individual defendants; as well as the claims against the Texas Department of Criminal Justice ("TDCJ"), the TDCJ-Correctional Institutions Division, the James Lynaugh Unit, the Office of the Attorney General, the Office of the Inspector General, the Office of the Independent Ombudsman, and the Texas Board of Criminal Justice. (ECF No. 8). On May 12, 2025, and May 20, 2025, the remaining named defendants partially[1] moved to dismiss. (ECF Nos. 20, 23). On July 29, 2025, Manuel Enriquez filed his original answer. (ECF Nos. 37, 37–1, 38–

---

[1]    The motion to dismiss was partial only because Enriquez did not move to dismiss the use-of-force claim against him. (*See* ECF No. 35 at 2).

39).  On August 14, 2025, the Court granted Wenckens's motion to voluntarily dismiss the claims against Angela Chevalier, Marvin Dunbar, Brian Patrick, and Eric Nichols.  (ECF Nos. 42, 45). On November 12, 2025, the magistrate judge recommended that the remaining defendants' motions to dismiss be granted in part and denied in part; the district judge adopted the report on March 2, 2026.  (ECF Nos. 20, 23, 49, 67).  On March 20, 2026, the Court denied Wenckens's motion for leave to amend his complaint.  (ECF No. 70).  On April 7, 2026, Luis Perez, Raul Ortega, and Jeremiah Flores filed their original answer.  (ECF No. 71).  Only the following claims remain:

- individual-capacity Eighth Amendment claims under 42 U.S.C. § 1983 for alleged excessive force against Enriquez and Flores; and

- individual-capacity Eighth Amendment claims under 42 U.S.C. § 1983 for alleged bystander liability against Perez, Ortega, and John Doe No. 1.

(ECF Nos. 1, 65, 70).

## II.    Evidence

This motion is supported by the following evidence:

| Exh. | Title of Document | Bates Nos. |
|------|-------------------|------------|
| A | TDCJ Medical Records (with business records affidavit) | DEF_0388–0662 |
| B | EAC Records (with business records affidavit) | DEF_0685–94 |
| C | Use of Force Report (with business records affidavit) | DEF_0696–0739 |
| D | Video of Use of Force Aftermath | DEF_0740 |
| E | Video of J1 B Wing | DEF_0741 |
| F | Video of J1 Picket | DEF_0742 |
| G | Video of J1 D Space | DEF_0743 |
| H | Screenshot of Video of Plaintiff with Cup | Def_0744 |

### III.    Statement of Facts

Plaintiff Justin Dewayne Wenckens is a Texas inmate in TDCJ's custody who was confined in G4 custody status at the James Lynaugh Unit in Fort Stockton, Texas, during the relevant period. (ECF No. 1 at 17–18); (Exh. B, EAC Records, at DEF_0686–88); (Exh. C, Use of Force Report, at DEF_0713). Defendant Jeremiah Flores was a TDCJ lieutenant at the Lynaugh Unit during the relevant period. (Exh. B, EAC Records, at DEF_0686). Defendants Manuel Enriquez, Luis Perez, and Raul Ortega were TDCJ correctional officers at the Lynaugh Unit during the relevant period. (*Id*.).

On July 10, 2024, at 4:00 a.m., Wenckens was exiting the J1 Building to walk to the inmate dining hall for breakfast when he aggressively approached Enriquez. (Exh. B, EAC Records, at DEF_0686–94): (Exh. C, Use of Force Report at DEF_0713–27); (Exh. D, Video of Use of Force Aftermath, at DEF_0740); (Exh. E, Video of J1 B Wing, at DEF_0741); (Exh. F, Video of J1 Picket, at DEF_0742); (Exh. G, Video of J1 D Space, at DEF_0743); (Exh. H, Screenshot of Video of Pl. with Cup, at DEF_0744); (ECF No. 1 at 18–22). Wenckens stated that he was going to fuck Enriquez's mom and wife because officers were turning on and off cell lights when counting inmates, thereby disrupting Wenckens's sleep.[2] (*Id*.). Enriquez calmly explained that he was only doing his job; that count was a vital and routine part of prison operations; that the lights needed to be on in order to do a proper count; that he had only ever treated Wenckens with respect; and that Wenckens's threats against his family were inappropriate. (*Id*.).

Wenckens then became belligerent and clenched his fist, asking, "What are you going to fucking do about it?" (*Id*.). Enriquez told Wenckens to calm down and walk to the inmate dining

---

[2]    Wenckens concedes that used obscenities against Enriquez, but instead claims that he said, "Fuck you too.  You kiss your mom with that that mouth?"  (ECF No. 1 at 19).

hall, but Wenckens refused and instead lunged at Enriquez.  (*Id*.).  Enriquez pushed Wenckens away to gain some distance, but Wenckens threw a cup of hot coffee in Enriquez's face, knocking his glasses to the ground.  (*Id*.).  Wenckens charged at Enriquez, at which point Enriquez used force to regain compliance, striking Wenckens with a closed fist twice.  (*Id*.).  Wenckens lunged at Enriquez, striking his face with a closed fist multiple times.  (*Id*.).  Enriquez responded by striking Wenckens's face.  (*Id*.).  Nonparty David Rodriguez, a TDCJ correctional officer at the Lynaugh Unit during the relevant period, witnessed Wenckens's staff assault while monitoring the inmate traffic outside J1 building; and immediately initiated the Incident Command System ("ICS") to alert all available officers to respond.  (*Id*.).  Flores, Perez, Ortega, and other officers arrived on the scene, at which point Wenckens ceased his assault on Enriquez.  (*Id*.).  Wenckens was not in hand restraints during the altercation.  (*Id*.).

Flores instructed Perez and Ortega to apply hand restraints to Wenckens, but Wenckens refused and pulled his arms away from the officers.  (*Id*.).  Flores instructed Wenckens to comply with the hand restraints, but Wenckens refused and continued to resist.  (*Id*.).  Flores instructed Rodriguez to get the video camera.  (*Id*.).  Perez and Ortega tried to secure Wenckens by pinning him to the wall outside J1 Building, but Wenckens continued to resist by pushing against the wall with his arms.  (*Id*.).  Perez and Ortega took Wenckens to the ground into a prone position, and pulled his arms behind his back.  (*Id*.).  Nonparty Isaac Gonzalez, a TDCJ correctional officer at the Lynaugh Unit during the relevant period, then applied hand restraints to Wenckens.  (*Id*.).

Within minutes, Rodriguez arrived with the video camera and immediately began recording the incident.  (Exh. B, EAC Records, at DEF_0686–94); (Exh. C, Use of Force Report, at DEF_0713–27); (Exh. D, Video of Use of Force Aftermath, at DEF_0740); (ECF No. 1 at 18–22).  The video begins with the officers narrating the time as 4:00 a.m., but Wenckens loudly

interjects that the time is actually 4:15 a.m.  The video shows Wenckens as conscious, defiant, and belligerent throughout, loudly talking over officers as they attempted to narrate the incident; pointing at officers and apportioning blame based on his view of specific events during the use of force; and calling officers "bitch," "punk," and "faggot."  (*Id*.).  Flores instructed Perez and Ortega to assist Wenckens to his feet and escort him to restrictive housing; and to make sure Wenckens was seen by medical staff.  (*Id*.).  At restrictive housing, Wenckens was placed in the shower cell, where his hand restraints were removed and he was subjected to a strip search.  (*Id*.).  After the strip search, Wenckens's clothes were returned to him, and he was told that he would be seen by medical staff at the unit infirmary as soon as they arrived.  (*Id*.).  No force was used during the video.  (*See id*.).

Nonparty April Arredondo, a UTMB vocational nurse, subsequently arrived at the unit and evaluated the participants.  (Exh. A, TDCJ Medical Records, at DEF_0513–15, 0579–80); (Exh. B, EAC Records, at DEF_0686–94); (Exh. C, Use of Force Report, at DEF_0713–27); (ECF No. 1 at 18–22).  Enriquez suffered an abrasion to the bridge of his nose and shoulder pain, and was referred to the Pecos County Memorial Hospital for further treatment.  (*Id*.).  Wenckens was referred to the same hospital for further treatment and was transported by ambulance shortly thereafter.  (*Id*.).  At 2:18 p.m. that same day, Wenckens returned to the Lynaugh Unit after being discharged from the hospital, where he was diagnosed with contusions to his face, chest, and abdomen; received treatment for a laceration on the top of his right eyebrow with glue in lieu of sutures; and was not prescribed any medication.  (*Id*.).  Upon his return, Wenckens was coherent and speaking clearly; awake, alert, and oriented to person, time, and place; without wounds or bruises; with a full range of motion; without dizziness; and with equal and reactive pupils.  (*Id*.).  Wenckens voiced no current complaints to unit medical staff.  (*Id*.).

On July 31, 2024, Wenckens reported that his vision was blurry to medical staff for the first time. (Exh. A, TDCJ Medical Records, at DEF_0493–94, 0577–78). On August 19, 2024, Wenckens received a second vision test, but he still had not been prescribed glasses by that time. (*Id*. at DEF_0571–72). Wenckens alleges that he was subsequently prescribed glasses to correct his vision by the time he filed his original complaint on January 27, 2025. (ECF No. 1 at 25).

## IV.    Standard of Review

"Summary judgment is appropriate 'if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Mandawala v. Baptist Sch. of Health Professions*, No. 23–50258, 2024 WL 1461943, *3 (5th Cir. Apr. 4, 2024) (quoting Fed. R. Civ. P. 56(a)). "When a government official has asserted qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Byrd v. Harrell*, 48 F.4th 343, 346 (5th Cir. 2022) (quotations omitted) (collecting cases). "When a motion for summary judgment identifies an absence of evidence that supports a material fact on which the non-movant bears the burden of proof at trial, the non-moving party must set forth specific facts that show that there is a genuine issue for trial." *Mandawala*, 2024 WL 1461943 at *3 (quotation omitted). "Rule 56 imposes no obligation for a court to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id*. (collecting cases); *Lewis v. Greenwood Motor Lines, Inc.*, No. 22–10758, 2023 WL 2810881, *2 (5th Cir. Apr. 6, 2023) ("Judges are not like pigs, hunting for truffles buried in the record." (quotation omitted)). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion

for summary judgment, that evidence is not properly before the district court." *Mandawala*, 2024 WL 1461943 at *3 (quotation omitted).

"[A] court must make all reasonable factual inferences from the evidence in the light most favorable to the nonmovant"; "[h]owever, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Bargher v. White*, 928 F.3d 439, 444 (5th Cir. 2019) (quotation omitted) (collecting cases). "We view the evidence in the light most favorable to [the nonmovant] and draw all inferences in his favor, so long as they are not blatantly contradicted or utterly discredited by a video recording." *Byrd*, 48 F.4th at 346–47 (quotations omitted).

## V.      Argument

**A.      Wenckens has failed to show a constitutional violation for excessive force because the force used against him was intended to restore discipline after he refused to comply with orders, threw hot coffee in Enriquez's face, punched Enriquez in the face multiple times, and resisted the application of hand restraints.**

"In evaluating excessive force claims under the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (quotations omitted) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)). "Though the focus of this standard is on the detention facility official's subjective intent to punish, intent is determined by reference to the well-known *Hudson* factors—[(1)] the extent of injury suffered, [(2)] the need for application of force, [(3)] the relationship between that need and the amount of force used, [(4)] the threat reasonably perceived by the responsible officials, and [(5)] any efforts made to temper the severity of a forceful response." *Id*. (quotations and alteration omitted). "The amount of force used must be more than *de minimis*, provided that the use of force is not of a sort

Page **12**

repugnant to the conscience of mankind."  *Id*.  "A plaintiff need not show significant injury, although the extent of the injury may supply insight as to the amount of force applied."  *Id*.

### 1. Although Wenckens's injury was more than *de minimis*, his allegations regarding the nature and extent of his injury are implausible.

The summary judgment evidence shows that Wenckens was transported to a freeworld hospital shortly after the use of force; that he was diagnosed with contusions to his face, chest, and abdomen; that he received treatment for a laceration on the top of his right eyebrow with glue in lieu of sutures; that he was not prescribed any medication; and that he was returned to the unit by 2:18 p.m. that same day.  (Exh. A, TDCJ Medical Records, at DEF_0513–15, 0579–80); (Exh. B, EAC Records, at DEF_0686–94); (Exh. C, Use of Force Report, at DEF_0713–27).  Even if Wenckens's contusions and eyebrow laceration are more than a *de minimis* injury, merely receiving glue in lieu of sutures and being discharged that same day is also not compatible with Wenckens's speculation of a concussion, blunt force trauma causing large lacerations on his scalp, two black eyes, a rotator cuff injury, swollen right knee, additional contusions to his back and legs, and blurry vision.  (*Compare id.*); (*with* ECF No. 49 at 8); (*and* ECF No. 1 at 22–25).  Indeed, upon his return to the unit, Wenckens was coherent and speaking clearly; awake, alert, and oriented to person, time, and place; without wounds or bruises; with a full range of motion; without dizziness; and with equal and reactive pupils.  (Exh. A, TDCJ Medical Records, at DEF_0513–15, 0579–80); (Exh. B, EAC Records, at DEF_0686–94); (Exh. C, Use of Force Report, at DEF_0713–27).  Significantly, Wenckens voiced no current complaints to unit medical staff upon his return from the hospital.  (*Id*.).  And in the video of the use of force aftermath, taken no more than 15 minutes after Enriquez's use of force, Wenckens's boisterous and lively behavior clearly contradicts his allegations regarding insufficient oxygen and losing consciousness.  (*Compare* Exh. D, Video of Use of Force Aftermath, at DEF_0740); (*with* ECF No. 1 at 4, 21).

In other words, Wenckens's allegations regarding the nature and extent of his injury are implausible; and he presents nothing beyond conclusory allegations, speculation, and unsubstantiated assertions. (*See id.*). These allegations are insufficient to defeat Defendants' motion for summary judgment. *See Foxworth v. Khoshdel*, No. 4:07–cv–3944, 2009 WL 3255270, *8–9 (S.D. Tex. Sept. 28, 2009) (holding that plaintiff's conclusory allegations of "painful physical injuries to the gums and mouth" were unsupported by objective findings in medical records, and thus could not overcome motion for summary judgment); *Turner v. Moffett*, No. 3:12–cv–220, 2013 WL 5214070, *3 (S.D. Tex. Sept. 17, 2013) (holding that plaintiff's claims were implausible, and thus subject to summary judgment, because his allegations were inconsistent with his medical records); *Robles v. Glenn*, No. 9:06–cv–256, 2007 WL 1655335, *4–5 (E.D. Tex. June 5, 2007) (holding that plaintiff who alleged that he was struck in the arm with a food slot bar failed to state claim where he was seen that same day by a nurse and four days later by a doctor, neither of whom found any signs of injury).

Additionally, Wenckens's speculation that his subsequent eyeglasses prescription resulted from this use of force is insufficient to show that a connection actually exists. *See Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (holding that prisoner's self-diagnosis alone cannot support medical conclusion); *McClure v. Foster*, No. 5:10–cv–78, 2011 WL 665819, *12–16 (E.D. Tex. Jan. 7, 2011), *report adopted*, 2011 WL 941442 (E.D. Tex. Feb. 16, 2011), *aff'd*, 465 F. App'x 373 (5th Cir. 2012). For one, Wenckens failed to report blurry vision upon his return to the unit from the hospital. (Exh. A, TDCJ Medical Records, at DEF_0513–15, 0579–80); (Exh. B, EAC Records, at DEF_0686–94); (Exh. C, Use of Force Report, at DEF_0713–27). Moreover, Wenckens waited until July 31, 2024, to report blurry vision for the first time; had not received eyeglasses by the time of a second vision test on August 19, 2024; and alleges merely that he was

prescribed eyeglasses sometime before he filed his original complaint on January 27, 2025.  (Exh. A, TDCJ Medical Records, at DEF_0493–94, 0571–72, 0577–78); (ECF No. 1).  These threadbare allegations fail to plausibly show causation.  Thus, the first *Hudson* factor weighs in favor of Wenckens to the extent that his injury was more than *de minimis*, but against him to the extent that his allegations regarding the nature and extent of his injury are implausible.

### 2.    Wenckens's own actions created the need for the force used.

The summary judgment evidence shows that Enriquez first pushed Wenckens to gain some distance after Wenckens (1) confronted Enriquez aggressively shouting obscenities without wearing hand restraints; (2) clenched his fist and asked Enriquez what he was going to do about it; (3) refused to walk away when directed; and (4) lunged at Enriquez.  (Exh. B, EAC Records, at DEF_0686–94): (Exh. C, Use of Force Report at DEF_0713–27); (Exh. D, Video of Use of Force Aftermath, at DEF_0740); (Exh. E, Video of J1 B Wing, at DEF_0741); (Exh. F, Video of J1 Picket, at DEF_0742); (Exh. G, Video of J1 D Space, at DEF_0743); (Exh. H, Screenshot of Video of Pl. with Cup, at DEF_0744); (ECF No. 1 at 18–22).  Enriquez then struck Wenckens twice with a closed fist after Wenckens threw a cup of hot coffee in Enriquez's face, knocking his glasses to the ground; and charged at Enriquez.  (*Id*.).  Finally, Enriquez struck Wenckens in the face after Wenckens lunged at Enriquez; and struck Enriquez with a closed fist multiple times.  (*Id*.). Additionally, Perez and Ortega pinned Wenckens to the wall outside J1 Building, took him to the ground into a prone position, and pulled his arms behind his back after Wenckens continuously resisted the application of hand restraints.  (*Id*.).  Enriquez suffered an abrasion to the bridge of his nose and shoulder pain, and received a referral to the Pecos County Memorial Hospital for further treatment.  (Exh. A, TDCJ Medical Records, at DEF_0513–15, 0579–80); (Exh. B, EAC Records, at DEF_0686–94): (Exh. C, Use of Force Report at DEF_0713–27).

Wenckens's own actions in refusing to comply with orders, throwing a cup of hot coffee in Enriquez's face, punching Enriquez in the face multiple times, and resisting the application of hand restraints created the need for the force used against him. *See, e.g., Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (holding that if "inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force," because discipline is essential for prison operations); *Minix v. Blevins*, No. 6:06–cv–306, 2007 WL 1217883, *24 (E.D. Tex. Apr. 23, 2007) (holding that "prisoners cannot pick and choose which prison rules to obey"); *Schneider v. Kaelin*, No. 2:12–cv–233, 2013 WL 1561015, *6–7 (S.D. Tex. Apr. 9, 2013) (holding that inmates do not have "right to cause disturbances creating a security problem"), *aff'd*, 569 F. App'x 277 (5th Cir. 2014). Thus, the second *Hudson* factor weighs heavily in favor of Defendants because Wenckens's own actions created the need for the force used.

### 3. The force used was proportional to Wenckens's misconduct.

The summary judgment shows, as explained above, that Wenckens's own actions created the need for the force used against him. (Exh. B, EAC Records, at DEF_0686–94): (Exh. C, Use of Force Report at DEF_0713–27); (Exh. D, Video of Use of Force Aftermath, at DEF_0740); (Exh. E, Video of J1 B Wing, at DEF_0741); (Exh. F, Video of J1 Picket, at DEF_0742); (Exh. G, Video of J1 D Space, at DEF_0743); (Exh. H, Screenshot of Video of Pl. with Cup, at DEF_0744); (ECF No. 1 at 18–22). Moreover, the force used was proportional to Wenckens's misconduct: Wenckens was pushed away after he menaced and lunged at Enriquez; struck twice in the face after he threw hot coffee in Enriquez's face and charged at him; and struck additionally in the face after he lunged at Enriquez and struck him with a closed fist multiple times. (*Id.*). And the force

stopped as soon as Wenckens stopped resisting. (*Id.*). Thus, the third *Hudson* factor weighs in favor of Defendants because the force used was proportional to Wenckens's misconduct.

> **4.     Wenckens's disruptive behavior plainly posed a perceivable threat to prison operations.**

The summary judgment shows, as explained above, that Wenckens refused to comply with orders, threw hot coffee in Enriquez's face, punched Enriquez in the face multiple times, and resisted the application of hand restraints. (Exh. B, EAC Records, at DEF_0686–94): (Exh. C, Use of Force Report at DEF_0713–27); (Exh. D, Video of Use of Force Aftermath, at DEF_0740); (Exh. E, Video of J1 B Wing, at DEF_0741); (Exh. F, Video of J1 Picket, at DEF_0742); (Exh. G, Video of J1 D Space, at DEF_0743); (Exh. H, Screenshot of Video of Pl. with Cup, at DEF_0744); (ECF No. 1 at 18–22). Moreover, as explained above, Enriquez suffered injuries and was referred to an outside hospital for further treatment. (*Id.*). Thus, the fourth *Hudson* factor weighs heavily in favor of Defendants because Wenckens's disruptive behavior plainly posed a perceivable threat to prison operations. *See Freeman v. Sims*, 558 F. App'x 412, 413 (5th Cir. 2014) (holding that need for force was "reasonably perceived" where plaintiff refused "to comply with orders" and demonstrated increasingly "aggressive behavior"); *Schneider v. Kaelin*, 569 F. App'x 277, 279–80 (5th Cir. 2014) (holding that force used "was justified" where plaintiff "was in an extremely agitated state of mind"; the officers believed he "needed to be made to calm down" partly because his "behavior could become self-injurious"; and the officers used only "as much force as necessary to restrain" him).

> **5.     The force used stopped as soon as Wenckens stopped resisting, and the treatment for his laceration required only glue and no further medication.**

The summary judgment evidence shows, as explained above, that the force used was proportional to Wenckens's misconduct, and stopped as soon as Wenckens stopped resisting.

(Exh. B, EAC Records, at DEF_0686–94): (Exh. C, Use of Force Report at DEF_0713–27); (Exh. D, Video of Use of Force Aftermath, at DEF_0740); (Exh. E, Video of J1 B Wing, at DEF_0741); (Exh. F, Video of J1 Picket, at DEF_0742); (Exh. G, Video of J1 D Space, at DEF_0743); (Exh. H, Screenshot of Video of Pl. with Cup, at DEF_0744); (ECF No. 1 at 18–22). Additionally, as explained above, Wenckens weas treated merely for one laceration that required glue in lieu of sutures; not prescribed any additional medication; and returned to the unit by 2:18 p.m. that same day. (Exh. A, TDCJ Medical Records, at DEF_0513–15, 0579–80); (Exh. B, EAC Records, at DEF_0686–94): (Exh. C, Use of Force Report at DEF_0713–27). Thus, the fifth *Hudson* factor weighs in favor of Defendants because the force used stopped as soon as Wenckens stopped resisting, and the treatment for his laceration required only glue and no further medication.

### 6. The core judicial inquiry reveals that Defendants used force against Wenckens in a good-faith effort to restore discipline.

The core judicial inquiry reveals, as explained above, that Defendants used force in a good faith effort to restore discipline after Wenckens refused to comply with orders, threw hot coffee in Enriquez's face, punched Enriquez in the face multiple times, and resisted the application of hand restraints. (Exh. B, EAC Records, at DEF_0686–94): (Exh. C, Use of Force Report at DEF_0713–27); (Exh. D, Video of Use of Force Aftermath, at DEF_0740); (Exh. E, Video of J1 B Wing, at DEF_0741); (Exh. F, Video of J1 Picket, at DEF_0742); (Exh. G, Video of J1 D Space, at DEF_0743); (Exh. H, Screenshot of Video of Pl. with Cup, at DEF_0744); (ECF No. 1 at 18–22). In other words, Defendants did not act intentionally without just cause or excuse, with an intent to inflict injury, under circumstances that show an evil intent, or to inflict pain for their own pleasure. *See Brown v. Vasquez*, 699 F. App'x 335, 335 (5th Cir. 2017) (holding that need for force used was created by prisoner's repeated failure to comply with orders and active resistance to restraints); *Funari v. Warden*, 609 F. App'x 255, 256 (5th Cir. 2015) (holding that need for force used was

created by prisoner's repeated failure to comply with orders and active resistance to restraints). Thus, Wenckens's Eighth Amendment excessive force claim must fail because he has failed to show that Defendants acted maliciously and sadistically for the very purpose of causing harm, as opposed to a good-faith effort to restore discipline.

**B.** **Wenckens cannot maintain a claim for bystander liability absent an underlying constitutional violation or personal involvement.**

"[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 762 F.3d 631, 646 (5th Cir. 2013) (quotation omitted) (collecting cases). "However, liability will not attach where an officer is not present at the scene of the constitutional violation." *Id*.

Here, the summary judgment evidence shows that Flores, Perez, and Ortega arrived on the scene after responding to the ICS; that Enriquez's use of force had ceased by the time they arrived; that Wenckens was not in hand restraints during the altercation with Enriquez; that Flores instructed Perez and Ortega to apply hand restraints to Wenckens, but Wenckens refused and pulled his arms away from the officers; that Flores instructed Wenckens to comply with the hand restraints, but Wenckens refused and continued to resist; that Perez and Ortega tried to secure Wenckens by pinning him to the wall outside J1 Building, but Wenckens continued to resist by pushing against the wall with his arms; that Perez and Ortega took Wenckens to the ground into a prone position and pulled his arms behind his back; and that Rodriguez then applied hand restraints to Wenckens. (Exh. B, EAC Records, at DEF_0686–94): (Exh. C, Use of Force Report at DEF_0713–27); (Exh. D, Video of Use of Force Aftermath, at DEF_0740); (Exh. E, Video of J1 B Wing, at DEF_0741); (Exh. F, Video of J1 Picket, at DEF_0742); (Exh. G, Video of J1 D Space,

at DEF_0743); (Exh. H, Screenshot of Video of Pl. with Cup, at DEF_0744); (ECF No. 1 at 18–22).

Wenckens cannot maintain a claim for bystander liability against Flores, Perez, or Ortega regarding Enriquez's use of force because, as explained above, there was no constitutional violation.  Moreover, Enriquez's use of force had ceased by the time Flores, Perez, and Ortega arrived at the scene.  (*Id*.).   Similarly, Wenckens cannot maintain a claim for bystander liability against Flores or Enriquez regarding Perez and Ortega's use of force in applying hand restraints because, as explained above, there was no constitutional violation.  Thus, Wenckens has failed to state a claim of bystander liability.

**C.     Defendants are entitled to qualified immunity because Wenckens lacked a clearly established right to refuse to comply with orders, throw hot coffee in Enriquez's face, punch Enriquez in the face multiple times, and resist the application of hand restraints.**

"Qualified immunity protects government officials from liability for damages when they violate the law, but nonetheless reasonably could have believed that they were acting lawfully." *Ramirez v. Killian*, 113 F.4th 415, 421 (5th Cir. 2024). "Therefore, the qualified immunity defense protects all but the plainly incompetent or those who knowingly violate the law." *Id*. (quotation omitted). "To overcome the defense, a plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id*. A court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *but see District of Columbia v. Wesby*, 583 U.S. 48, 62 n.7 (2018) (emphasizing "that lower courts

should think hard, and then think hard again, before addressing both qualified immunity and the merits of an underlying constitutional claim" (quotation omitted)).

"A right is clearly established when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ramirez*, 113 F.4th at 422. "For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020) (quotations omitted). "In other words, Plaintiffs must point this court to a legislative directive or case precedent that is sufficiently clear such that every reasonable official would have understood that what he is doing violates that law." *Id*. (collecting cases). "[U]npublished opinions cannot themselves establish binding law for this circuit," and do not amount to "clearly established" law.[3] *Ramirez*, 113 F.4th at 426 (collecting cases). "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Id.* at 429–30 (collecting cases). "In denying a motion for summary judgment on qualified immunity grounds," the trial court "decides that a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law." *Id.* at 430.

Here, the summary judgment shows, as explained above, that Wenckens refused to comply with orders; that Wenckens threw hot coffee in Enriquez's face; that Wenckens punched Enriquez in the face multiple times; that Wenckens resisted the application of hand restraints; that the force used was proportional to Wenckens's misconduct; and that the force stopped as soon as Wenckens stopped resisting. (Exh. B, EAC Records, at DEF_0686–94): (Exh. C, Use of Force Report at DEF_0713–27); (Exh. D, Video of Use of Force Aftermath, at DEF_0740); (Exh. E, Video of J1

---

[3] Even "a court of appeals [published] decision may [not] constitute clearly established law for purposes of qualified immunity." *See City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 43 (2019) (reserving issue).

B Wing, at DEF_0741); (Exh. F, Video of J1 Picket, at DEF_0742); (Exh. G, Video of J1 D Space, at DEF_0743); (Exh. H, Screenshot of Video of Pl. with Cup, at DEF_0744); (ECF No. 1 at 18–22). As explained above, Wenckens has failed to show a constitutional violation. Additionally, Wenckens has failed to cite any clearly established law for the remarkable proposition that prison officials violate the Eighth Amendment when they use force to restore the discipline breached by an actively disruptive and unrestrained inmate; and undersigned counsel is likewise unaware of supporting authority. Thus, Defendants are entitled to qualified immunity.

## VI.    Prayer

Therefore, Defendants pray that summary judgment be granted in their favor on all claims against them.

Respectfully submitted,


**Ken Paxton**
Attorney General of Texas

**Brent Webster**
First Assistant Attorney General

**Ralph Molina**
Deputy First Assistant Attorney General

**Austin Kinghorn**
Deputy Attorney General for Civil Litigation

**Briana M. Webb**
Division Chief
Law Enforcement Defense Division


July 13, 2026

*/s/ Vishal V. Iyer*
**Vishal V. Iyer**
Texas Bar No. 24106134
Assistant Attorney General
Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711–2548
p: (512) 463–2080
f: (512) 370–9814
e: vishal.iyer@oag.texas.gov

**Counsel for Defendants**

## Certificate of Conference

A conference is not required for a dispositive motion for summary judgment . *See* W.D. Tex. LR CV–7(G).

July 13, 2026                                        */s/ Vishal V. Iyer*
                                                     **Vishal V. Iyer**
                                                     Assistant Attorney General

## Certificate of Service

I certify that I mailed this document, and any attached pages, to Plaintiff, **CMRRR 7021 2720 0002 0445 0079**, to Justin Dewayne Wenckens, TDCJ No. 02477197, Coffield Unit, 2661 FM 2054, Tennessee Colony, TX 75884, within one business day of the date below.  Additionally, I have made arrangements with TDCJ to ensure that Plaintiff may view the video and photos cited as exhibits herein.  Fed. R. Civ. P. 5(b)(2)(C).

July 13, 2026                                        */s/ Vishal V. Iyer*
                                                     **Vishal V. Iyer**
                                                     Assistant Attorney General