**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **JUSTIN DEWAYNE WENCKENS,**<br>**TDCJ NO. 02477197,**<br>***Plaintiff*,** | §<br>§<br>§<br>§ | |
| **v.** | § | **P-25-CV-00005-DC** |
| **MANUEL ENRIQUEZ, JR., *et al.*,**<br>***Defendants*.** | §<br>§<br>§ | |

**PLAINTIFF'S MOTION FOR LEAVE TO SUBSTITUTE OFFICER DAVID RODRIGUEZ FOR JOHN DOE NO. 1, AMEND COMPLAINT, AND REQUEST FOR SERVICE**

Plaintiff Justin Dewayne Wenckens, proceeding pro se, respectfully moves for leave to substitute Officer David Rodriguez for John Doe No. 1, to amend his Complaint solely to reflect that identification, and for service of process. In support, Plaintiff states:

1. Plaintiff's Original Complaint named John Doe No. 1 as one of the correctional officers allegedly involved in the July 20, 2024, incident and explained that the Doe designation was being used as a placeholder until the officer could be identified.

2. Plaintiff subsequently sought discovery and information necessary to identify the previously unknown officer.

3. On August 14, 2026, the Court granted Plaintiff's Opposed Motion to Extend Discovery and Related Scheduling Order Deadlines. The Court extended the deadline to identify and serve the John Doe Defendant through September 15, 2026.

4. Plaintiff has now identified the correctional officer previously designated as John Doe No. 1 as Officer David Rodriguez, who was a correctional officer at the James Lynaugh Unit at the time of the July 20, 2024, incident.

## I. Request to Substitute Officer Rodriguez for John Doe No. 1

5. Plaintiff respectfully requests leave pursuant to Federal Rule of Civil Procedure 15(a)(2) to substitute Officer David Rodriguez for John Doe No. 1. Plaintiff does not seek through this Motion to add a new defendant who was not previously alleged to have participated in the events giving rise to this action, nor does Plaintiff seek to assert a new claim or theory of liability. Rather, Plaintiff seeks to replace the placeholder designation with the now-known identity of the officer previously designated as John Doe No. 1.

6. The substantive claim against this Defendant remains the bystander-liability claim previously pleaded against John Doe No. 1. The proposed First Amended Complaint substitutes Officer David Rodriguez for John Doe No. 1 and conforms the pleading to the claims remaining after the Court's March 2, 2026 Order. Plaintiff does not seek to revive any claim previously dismissed by the Court.

7. The requested substitution is consistent with the Court's August 14, 2026, Order, which specifically extended Plaintiff's deadline to identify and serve the John Doe Defendant. Plaintiff is contemporaneously requesting a two-day extension through September 17, 2026, and asks that the identification and substitution be deemed timely.

## II. Request for Service

8. Plaintiff is proceeding in forma pauperis in this action. The Court granted Plaintiff's Application for Leave to Proceed In Forma Pauperis on January 28, 2025. (Doc. 4.) Under Federal Rule of Civil Procedure 4(c)(3), when a plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915, the Court must order service by the United States Marshal or Deputy Marshal or by a person specially appointed by the Court.

9. Plaintiff therefore respectfully requests that, upon granting leave to substitute Officer David Rodriguez for John Doe No. 1, the Court direct the Clerk to issue summons for Officer David Rodriguez and direct service pursuant to Rule 4(c)(3).

10. Plaintiff presently understands that Officer David Rodriguez was employed as a correctional officer at the James Lynaugh Unit, 1098 South Highway 2037, Fort Stockton, Texas 79735, at the time of the events giving rise to this action. To the extent additional identifying or service information is required to effectuate service, Plaintiff respectfully requests that the Court permit TDCJ or counsel for the existing Officer Defendants to provide such information directly to the Court or United States Marshal for the limited purpose of effectuating service.

**Prayer**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that the Court: (a) grant leave to substitute Officer David Rodriguez for John Doe No. 1; (b) grant leave to amend the Complaint to reflect that substitution and conform the pleading to the Court's March 2, 2026 Order and accept the proposed amended complaint; (c) direct the Clerk to issue summons for Officer David Rodriguez; (d) direct service pursuant to Federal Rule of Civil Procedure 4(c)(3) and 28 U.S.C. § 1915; (e) if necessary, direct TDCJ or counsel for the existing Officer Defendants to provide sufficient identifying and/or service information to permit service; and (f) grant such other and further relief to which Plaintiff may be entitled.

Dated: September 17, 2026.

Respectfully submitted,

JUSTIN DEWAYNE WENCKENS
TDCJ ID NO. 02477197
H. H. Coffield Unit
2661 FM 2054
Tennessee Colony, Texas 75884
***Plaintiff Pro Se***

**Certificate of Conference**

I hereby certify that on my behalf, my wife, Michelle Wenckens attempted to confer with counsel for Defendants, Jordan Grundhoefer regarding this motion. At the time of filing, a response had not been received. If a response is received, Plaintiff will update the Court accordingly.

JUSTIN DEWAYNE WENCKENS
TDCJ ID NO. 02477197

**Certificate of Service**

In accordance with the Federal Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing document has been served USPS Priority Mail on the following counsel on September 17, 2026:

***Counsel for Defendants:***

**Ken Paxton**
Attorney General of Texas
**Brent Webster**
First Assistant Attorney General
**Ralph Molina**
Deputy First Assistant Attorney General
**Austin Kinghorn**
Deputy Attorney General for Civil Litigation
**Briana M. Webb**
Acting Division Chief
Law Enforcement Defense Division

**JORDAN GRUNDHOEFER**
Assistant Attorney General
Law Enforcement Defense Division
jordan.grundhoefer@oag.texas.gov
Law Enforcement Defense Division
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711



JUSTIN DEWAYNE WENCKENS
TDCJ ID NO. 02477197

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **JUSTIN DEWAYNE WENCKENS,** | § | |
| **TDCJ NO. 02477197,** | § | |
| ***Plaintiff*,** | § | |
| | § | |
| **v.** | § | **P-25-CV-00005-DC** |
| | § | |
| **MANUEL ENRIQUEZ, JR., *et al.*,** | § | |
| ***Defendants*.** | § | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO SUBSTITUTE OFFICER DAVID RODRIGUEZ FOR JOHN DOE NO. 1, AMEND COMPLAINT, AND REQUEST FOR SERVICE**

On this day, the Court considered Plaintiff's Motion for Leave to Substitute Officer David Rodriguez for John Doe No. 1, Amend Complaint, and Request for Service. After considering the Motion, the record, and applicable law, the Court finds that the Motion should be **GRANTED**.

**IT IS THEREFORE ORDERED** that Officer David Rodriguez is substituted for John Doe No. 1.

IT IS FURTHER ORDERED that Plaintiff is granted leave to amend his Complaint to reflect the substitution of Officer David Rodriguez for John Doe No. 1 and to conform the pleading to the Court's March 2, 2026, Order, and Plaintiff's proposed amended complaint is accepted and deemed filed as of the date of this Order.

**IT IS FURTHER ORDERED** that the District Clerk **SERVE** copies of Plaintiff's Amended § 1983 Complaint, this Order, and a Summons upon Defendant David Rodriguez by certified mail, return receipt requested. Defendants have **40 days** from the date on which this Order is received to answer or otherwise plead in response to Plaintiff's claims, except any claims previously dismissed by the Court. Such responsive pleading shall constitute consent in writing to be served by electronic means, as well as waiver of service.

It is so **ORDERED**.

SIGNED this _____ day of ____________________, 2026.

________________________________________

DAVID COUNTS
UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **JUSTIN DEWAYNE WENCKENS,** | § | |
| **TDCJ NO. 02477197,** | § | |
| ***Plaintiff*,** | § | |
| | § | |
| **v.** | § | **P-25-CV-00005-DC** |
| | § | |
| **MANUEL ENRIQUEZ, JR., *et al.*,** | § | |
| ***Defendants*.** | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

## Table of Contents


Table of Contents ..... i

I. Summary of Claim ..... 1

II. Jurisdiction ..... 1

III. Venue ..... 1

IV. Parties to This Suit ..... 1

A. Plaintiff ..... 1

B. Officer Defendants ..... 2

V. Plaintiff's Background ..... 3

A. Personal Information. ..... 3

B. Inmate Identification Numbers. ..... 3

C. Classification. ..... 4

D. Parole Eligibility. ..... 4

VI. Factual Allegations ..... 4

A. Excessive Use of Force. ..... 4

B. Plaintiff's Injuries. ..... 7

C. Exhaustion of Administrative Remedies. ..... 9

D. No Disciplinary Case Was Pursued Against Plaintiff. ..... 10

VII. Proximate Cause ..... 11

VIII. Causes of Action / Statement of Claims ..... 11

Count I
*Excessive Use of Force* 42 U.S.C. § 1983 - Eighth Amendment
Defendants Manuel Enriquez, Jr. and Jeremiah Flores ..... 11

Count II
*Bystander Liability* - Eighth Amendment
Defendants Luis Perez, Raul Ortega, and David Rodriguez ..... 13

IX. Punitive Damages ..... 13

X. Damages ... 14

XI. Jury Demand ... 14

XII. Conclusion and Prayer ... 14

Declaration of Justin Dewayne Wenckens ... 16

Certificate of Service ... 17

TO THE HONORABLE COURT:

Plaintiff, Justin Dewayne Wenckens, TDCJ ID No. 02477197, *pro se* ("Justin" or "Plaintiff"), brings this lawsuit against Defendants.

## I. <u>Summary of Claim</u>

1. On July 20, 2024, in the early morning hours, Justin Dewayne Wenckens, a state prison inmate, was walking to the chow hall when Defendants Manuel Enriquez, Jr. and Jeremiah Flores subjected him to excessive force, causing him to suffer injuries and lose consciousness. Defendants Luis Perez, Raul Ortega, and David Rodriguez were present during the use of force and failed to intervene.

## II. <u>Jurisdiction</u>

2. This action arises under 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## III. <u>Venue</u>

3. Venue is proper in this Court, pursuant to 28 U.S.C. §§ 1391(b)(1), (2), as all Defendants are residents of the State of Texas and the events giving rise to the claim occurred in this district.

4. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2).

## IV. <u>Parties to This Suit</u>

### A. Plaintiff

5. Plaintiff is Justin Dewayne Wenckens, TDCJ ID No. 02477197, and is currently confined at the H.H. Coffield Unit, 2661 FM 2054, Tennessee Colony, Texas 75884.

## B. Officer Defendants

6. Each of the below Defendants were Correctional Officers for TDCJ and involved in the assault on Plaintiff. They are collectively referred to as the "Officer Defendants."

7. There were five (5) Correctional Officers present and involved in the assault on July 20, 2024. At the time Plaintiff filed his Original Complaint, Plaintiff did not know the identity of all five officers and therefore identified the fifth unknown officer as "John Doe No. 1." Plaintiff has since identified the officer previously designated as John Doe No. 1 as Officer David Rodriguez.

8. Manuel Enriquez, Jr. ("Enriquez" or "Defendant Enriquez") was a Correctional Officer at the James Lynaugh Unit at the time the incident occurred. At all relevant times, he was acting under color of state law in his capacity as a correctional officer for TDCJ. He is sued in his individual capacity for compensatory and punitive damages.

9. Luis Perez ("Perez" or "Defendant Perez") was a Correctional Officer at the James Lynaugh Unit at the time the incident occurred. At all relevant times, he was acting under color of state law in his capacity as a correctional officer for TDCJ. He is sued in his individual capacity for compensatory and punitive damages.

10. Raul Ortega ("Ortega" or "Defendant Ortega") was a Correctional Officer at the James Lynaugh Unit at the time the incident occurred. At all relevant times, he was acting under color of state law in his capacity as a correctional officer for TDCJ. He is sued in his individual capacity for compensatory and punitive damages.

11. Jeremiah Flores ("Flores" or "Defendant Flores") was a Correctional Officer at the James Lynaugh Unit at the time the incident occurred. At all relevant times, he was acting under

color of state law in his capacity as a correctional officer for TDCJ. He is sued in his individual capacity for compensatory and punitive damages.

12. David Rodriguez, previously identified as John Doe No. 1, was a Correctional Officer at the James Lynaugh Unit at the time the incident occurred. At all relevant times, he was acting under color of state law in his capacity as a correctional officer for TDCJ. He is sued in his individual capacity for compensatory and punitive damages. David Rodriguez is a resident of Texas and can be served with process at the James Lynaugh Unit, 1098 South Highway 2037, Fort Stockton, Texas 79735, or wherever he may be found.

## V. <u>Plaintiff's Background</u>

### A. Personal Information.

13. Plaintiff Justin Dewayne Wenckens was taken into TDCJ custody on December 18, 2023. His assigned TDCJ Identification Number is 02477197.

14. Plaintiff's current unit of assignment is the H.H. Coffield Unit, 2661 FM 2054, Tennessee Colony, Texas 75884.

15. Plaintiff's current weight is roughly 160 pounds, and height is 5'9".

16. Plaintiff's date of birth is April 7, 1977.

17. Plaintiff has not previously filed any lawsuits.

### B. Inmate Identification Numbers.

18. Plaintiff's previous inmate identification numbers are:

a. State Identification Number ("SID") is 05899305;
b. Harris County's System Person Number ("SPN") is 02247056;
c. Previous TDCJ numbers are:
    i. No. 1096899 (May 13, 2002 – July 4, 2004);
    ii. No. 01779025 (April 30, 2012 – August 25, 2020); and
    iii. No. 02477197 (December 18, 2023 – current).

### C. Classification.

19. Plaintiff's current custody classification is Line Class 1, Custody Level G2; however, in July 2024 at the time of the assault, he was a Line Class 3, Custody Level G4.

### D. Parole Eligibility.

20. Plaintiff is not eligible for mandatory supervision; however, Plaintiff's next Parole Review is set for November 2027.

## VI. <u>Factual Allegations</u>

### A. Excessive Use of Force.

21. Justin Dewayne Wenckens was transferred to the James Lynaugh Unit in March 2024. While at the Lynaugh Unit, his assigned cell was in the B-Pod, J1 Wing, Cell No. 213.

22. During the evening of July 19, 2024, into the early hours of the next morning, the lights in the wing were continuously being turned off and on causing Plaintiff to have disrupted sleep throughout the night.

23. The next morning, around 3:45 a.m. Plaintiff's cell door opened for him to go to breakfast. He asked one of the Officer Defendants to speak to the building officer. Plaintiff asked an Officer Defendant why the lights were being turned on and off all night. The Officer Defendant shrugged his shoulders, motioned to the picket[1], and instructed him to ask the officer in the picket, which was Defendant Enriquez.

24. Plaintiff walked to the picket window, knocked on the window, motioned with his hands to the above lights and mouthed the words to Defendant Enriquez, "What's up with the

---

[1] The "picket" is the pod's control room located in the center of 3 wings surrounding the area. The control officer is responsible for the observation, safety and security of staff and inmates. The officer assigned to the picket controls the pod gates, the section doors, as well as the doors to all the cells and has a clear view of each section.

lights?" Enriquez mouthed back his reply, "Fuck you." This was the end of the conversation and interaction between Defendant Enriquez and Plaintiff.

25. While walking away, Plaintiff said "Fuck you too. You kiss your mom with that mouth?"

26. Plaintiff walked to the table in the center of the day room where he sat and waited 5-10 minutes to be called to proceed to the breakfast line. Groups of 25 inmates at a time were being called, and Plaintiff was in one of the last groups to be called.

27. Breakfast is not in the same building as the inmates are housed. At the Lynaugh Unit, inmates are taken from their building in groups of about 25 to a separate building for breakfast (the "chow hall").

28. Plaintiff was almost the last person to leave the day room. He had to walk past the picket window to get to the breakfast line. Plaintiff did not look at or speak to Defendant Enriquez as he walked past the picket window, nor did Defendant Enriquez speak to Plaintiff.

29. Up to this point, every interaction between Plaintiff and the Officer Defendants, including Defendant Enriquez, was recorded on the security cameras. However, there is no video surveillance outside of Building J1.

30. Before Plaintiff exited Building J1, Defendant Enriquez had already left his post inside the picket and gone outside, as reflected in the J1 picket surveillance video. When Plaintiff walked outside, he observed three Officer Defendants standing on the sidewalk outside of the J1 Building. When Plaintiff was approximately 10 to 15 yards down the sidewalk, Defendant Enriquez instructed Plaintiff to stop walking and to come to him. Enriquez asked Plaintiff what he had said about his mother. Plaintiff replied that he did not know his mother.

31. In plain view of approximately 25 inmates and three Officer Defendants, Defendant Enriquez struck Plaintiff in the face with his fist while holding a large set of approximately five to seven brass keys in that hand. Plaintiff looked toward the other Officer Defendants, who took no action to intervene. Rather than intervene, the Officer Defendants rushed the other inmates away from the scene.

32. When Plaintiff turned his attention back to Defendant Enriquez, he observed Enriquez bobbing up and down in a boxer-type stance with the keys in one hand. Defendant Enriquez then struck Plaintiff repeatedly in the face and head. Blood began running profusely from two open wounds on Plaintiff's head, and Plaintiff fell to the ground.

33. The Officer Defendants approached Plaintiff while he was on the ground and placed him in handcuffs behind his back. While Plaintiff remained on the ground in handcuffs, an unidentified Officer Defendant lay on top of him, causing Plaintiff to lose consciousness.

34. While Plaintiff remained on the ground and handcuffed behind his back, he continued to be struck, and his face was pushed into the ground. Because of his position on the ground and the blows he had sustained, Plaintiff could not identify which officer or officers committed each act. The lacerations on Plaintiff's face were bleeding so heavily that the dirt beneath his face turned to mud.

35. Plaintiff did not resist or defend himself in any way.

36. Upon regaining consciousness, Plaintiff awoke to Defendant Flores slapping him while yelling at him to wake up. Plaintiff was still on the ground and handcuffed behind his back. Defendant Enriquez was yelling that he had “kicked his fucking ass.” Plaintiff then heard one of the Officer Defendants announce that the cameras were rolling.

37. The Officer Defendants assisted Plaintiff to his feet and escorted him to the Administrative Building. While being escorted, Plaintiff made statements aloud describing the incident that had just occurred so that his statements would be captured by the video camera.

38. The Incident Command System was activated after the use-of-force incident had occurred. The video obtained as part of that activation therefore recorded the aftermath of the incident rather than the initial use of force outside Building J1.

39. Plaintiff was placed in the "live building shower" and required to remove his clothing while being recorded on video to document his injuries. While there, Plaintiff began experiencing blurred vision and vomiting.

**B. Plaintiff's Injuries.**

40. Plaintiff was taken by stretcher to the prison medical unit. Medical personnel called 911, and Plaintiff was transported by ambulance to Pecos County Memorial Hospital for further evaluation and treatment.

41. At Pecos County Memorial Hospital, Plaintiff underwent CT imaging and medical evaluation and was treated for a head injury. Plaintiff suffered blunt-force trauma, large lacerations to his forehead and scalp, two black eyes, swelling to his right knee, and multiple contusions to his back, legs, chest and abdomen. Plaintiff was also given medication for pain.

42. Plaintiff has been left with an approximately one-to-two-inch scar on his forehead, which has caused him embarrassment about his appearance.

43. Since the incident, Plaintiff has experienced increased anxiety, insomnia, and emotional distress.

44. While at the hospital, Plaintiff repeatedly asked medical personnel to contact the local sheriff because he was afraid to return to the custody of the officers involved in the incident

and feared for his safety. Medical personnel informed Plaintiff that they could not make the call but that his request would be documented in his medical records.

45. Plaintiff's wife, Michelle Wenckens, learned of the incident within hours after it occurred and contacted Warden Bundy to report the incident and request an investigation. Warden Bundy spoke with Michelle several times that morning regarding Plaintiff's condition and hospital status. During one of those conversations, Warden Bundy told Michelle that, after reviewing the incident, "the officer was not entirely innocent in the matter."

46. After Plaintiff was released from the hospital, he was transported to Warden Bundy's office. Warden Bundy informed Plaintiff that he had spoken with Plaintiff's wife and allowed Plaintiff to call her. Plaintiff gave Warden Bundy a brief account of the incident. Warden Bundy then instructed the transport officer to photograph Plaintiff's injuries; however, no photographs were taken.

47. On July 23, 2024, medical personnel performed a follow-up evaluation of Plaintiff because he was experiencing continuing problems with his vision and rectal bleeding. Plaintiff was prescribed antibiotics for his head wound and medication for pain.

48. On July 24, 2024, Plaintiff's wife sent a follow-up email to TDCJ officials specifically requesting preservation of video evidence relating to the July 20, 2024, incident. She requested that "any and all video recordings that have any part of the incident from any angle do not get destroyed and are put in a file for later use."

49. The July 24, 2024, email also notified TDCJ officials that Plaintiff had filed a Step 1 Grievance concerning the July 20, 2024, incident.

50. Plaintiff's injuries were also documented during the intake process upon his arrival at the French Robertson Unit.

51. On July 31, 2024, Plaintiff briefly saw medical personnel at the Robertson Unit.

52. Following the incident, Plaintiff continued to experience vision problems and was subsequently prescribed corrective eyeglasses.

**C. Exhaustion of Administrative Remedies.**

53. On or about July 24, 2024, Plaintiff submitted an I-127 Step 1 Grievance concerning the July 20, 2024 incident. The grievance was assigned No. 2024133023 and was closed on July 29, 2024. In the grievance, Plaintiff described the use of force and requested appropriate action concerning the officers' conduct. Plaintiff also requested that any disciplinary action arising from the incident be dismissed or removed from his record and requested other available administrative relief.

54. The grievance box was located directly across from the cell in which Plaintiff was housed. Plaintiff personally observed his I-127 Step 1 Grievance being placed in the grievance box. On July 24, 2024, Plaintiff observed the Unit Grievance Officer remove the grievance from the box at approximately 1:00 or 2:00 p.m. This activity was captured on video surveillance.

55. On July 25, 2024, five days after the incident, Plaintiff was transferred from the Lynaugh Unit, a medium-security facility, to the French Robertson Unit, a maximum-security facility in Abilene, Texas.

56. Because Plaintiff had been transferred from the Lynaugh Unit shortly after submitting his first Step 1 Grievance, he was concerned that the grievance might be lost or not processed. Out of an abundance of caution, Plaintiff rewrote and submitted the same Step 1 Grievance to the Robertson Unit Grievance Officer on August 2, 2024. This grievance was timely because it was submitted within 15 days of the July 20, 2024, incident. *See* TDCJ Offender Orientation Handbook § VIII(B) (Feb. 2017).

57. The Step 1 Grievance Plaintiff submitted at the Robertson Unit was screened and returned to him on August 2, 2024, because "[t]he issue presented is not grievable." The returned grievance included an attachment stating that "[a]ll uses of force are reviewed by designated use of force staff and will not be addressed through the grievance procedure[.]"

58. Plaintiff timely attempted to pursue the available grievance procedure concerning the July 20, 2024, use-of-force incident. Plaintiff and his wife were repeatedly informed that staff assaults and use-of-force incidents were handled by OIG rather than through the inmate grievance procedure. Consistent with those representations, Plaintiff's August 2, 2024, Step 1 Grievance was screened and returned to him because "[t]he issue presented is not grievable," with an attachment expressly stating that "[a]ll uses of force are reviewed by designated use of force staff and will not be addressed through the grievance procedure[.]" Plaintiff therefore contends that he exhausted the administrative remedies available to him concerning the July 20, 2024, incident.

## D. No Disciplinary Case Was Pursued Against Plaintiff.

59. Plaintiff was not served with or prosecuted through a disciplinary case and received no disciplinary punishment as a result of the July 20, 2024 incident.

60. On or about July 24, 2024, an unknown lieutenant working the night shift presented Plaintiff with a Preliminary Investigation Report stating that Plaintiff had thrown coffee in Defendant Enriquez's face. Plaintiff disputed that allegation. The J1 picket surveillance video shows Plaintiff walking through the dayroom with his cup before leaving the building. Photographs taken of Defendant Enriquez after the incident do not show coffee on his clothing.

61. Post-incident photographs of Defendant Enriquez depict a small injury near the bridge of his nose but do not depict apparent swelling, a black eye, or substantial bruising to his

face. Separate post-incident photographs show Defendant Enriquez's eyeglasses significantly bent and damaged.

62. Plaintiff was never served with an official disciplinary charge arising from the July 20, 2024 incident, was never provided a disciplinary hearing concerning the incident, and received no disciplinary punishment as a result of the incident.

63. On November 13, 2024, in response to a Public Information Request to TDCJ, Plaintiff's wife received a "Basic Information" report reflecting an administrative/disciplinary charge against Plaintiff for "Level I 3.1 Assaulting an Officer with a Weapon resulting in a Non-Serious Injury or no Injury." This was the first time Plaintiff or his wife learned that TDCJ records reflected such a charge. Plaintiff had never been served with the charge, provided a disciplinary hearing concerning it, or received disciplinary punishment arising from it.

64. On November 13, 2024, Plaintiff's wife contacted the Office of the Independent Ombudsman regarding the disciplinary charge reflected in the "Basic Information" report. She was informed that Plaintiff had not received a disciplinary charge arising from the July 20, 2024 incident.

## VII. Proximate Cause

65. The acts and omissions of Defendants Enriquez, Flores, Perez, Ortega, and Rodriguez, as alleged herein, were a direct and proximate cause of Plaintiff's injuries and damages.

## VIII. Causes of Action / Statement of Claims

### Count I
### *Excessive Use of Force*
### 42 U.S.C. § 1983 - Eighth Amendment
### Defendants Manuel Enriquez, Jr. and Jeremiah Flores

66. Plaintiff incorporates the preceding factual allegations as if fully set forth herein.

67. Defendants Enriquez and Flores, acting under color of state law, subjected Plaintiff to excessive force in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. The force alleged herein was not applied in a good-faith effort to maintain or restore discipline but was applied maliciously and sadistically to cause harm.

68. Specifically, Defendant Enriquez struck Plaintiff repeatedly in the face and head, including while holding a large set of brass keys in his striking hand. Plaintiff did not strike, punch, threaten, resist, or otherwise use physical force against Defendant Enriquez at any time during the incident. Plaintiff alleges that the force used by Defendant Enriquez was unnecessary and was not applied in a good-faith effort to maintain or restore discipline.

69. After Plaintiff had been struck repeatedly, fallen to the ground, been placed in handcuffs behind his back, and lost consciousness, Plaintiff regained consciousness while Defendant Flores was slapping him and yelling at him to wake up. Plaintiff alleges that he was restrained and posed no threat requiring the application of force by Defendant Flores.

70. At all times relevant to these allegations, Defendants Enriquez and Flores were acting under color of state law in their capacities as correctional officers at the Lynaugh Unit and within the scope of their official duties.

71. As a direct and proximate result of the excessive force used by Defendants Enriquez and Flores, Plaintiff suffered physical injuries, pain and suffering, disfigurement, and emotional distress.

72. Plaintiff alleges that the force used by Defendants Enriquez and Flores was unnecessary and wanton and was applied maliciously and sadistically rather than in a good-faith effort to maintain or restore discipline, in violation of Plaintiff's Eighth Amendment rights.

**<u>Count II</u>**
***Bystander Liability* - Eighth Amendment**
**Defendants Luis Perez, Raul Ortega, and David Rodriguez**

73. Plaintiff incorporates the preceding factual allegations as if fully set forth herein.

74. Defendants Perez, Ortega, and Rodriguez were present during the use of force against Plaintiff and observed the force being used against him. Each Defendant knew that Plaintiff was being subjected to excessive force and had a reasonable opportunity to intervene to prevent or reduce the harm but failed to do so.

75. Plaintiff did not strike, punch, threaten, resist, or otherwise use physical force against Defendant Enriquez or any other officer during the incident. Despite Plaintiff's lack of resistance, Defendants Perez, Ortega, and Rodriguez failed to intervene while force was being used against Plaintiff.

76. Instead of intervening to protect Plaintiff, Defendants Perez, Ortega, and Rodriguez allowed the use of force to continue despite having an opportunity to intervene.

77. The failure of Defendants Perez, Ortega, and Rodriguez to intervene violated Plaintiff's rights under the Eighth Amendment.

78. As a direct and proximate result of Defendants Perez, Ortega, and Rodriguez's failure to intervene, Plaintiff suffered the physical injuries, pain and suffering, disfigurement, and emotional distress alleged herein.

## IX. <u>Punitive Damages</u>

79. Plaintiff incorporates the preceding allegations as if fully set forth herein.

80. Plaintiff alleges that Defendants Enriquez, Flores, Perez, Ortega, and Rodriguez acted with reckless or callous indifference to Plaintiff's federally protected rights and/or with an

evil motive or intent. Plaintiff therefore seeks punitive damages against each Defendant in his individual capacity in an amount to be determined by the jury.

## X. Damages

81. Plaintiff incorporates the preceding allegations as if fully set forth herein.

82. As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff suffered physical injuries and impairment, physical pain and suffering, permanent disfigurement, emotional distress and mental anguish, and reasonable and necessary medical expenses, both past and future.

83. Plaintiff seeks actual and compensatory damages in an amount to be determined by the trier of fact, punitive damages against the individual Defendants to the extent permitted by law, costs of court, and any other relief to which Plaintiff may be entitled.

## XI. Jury Demand

84. Plaintiff respectfully requests a jury trial.

## XII. Conclusion and Prayer

85. WHEREFORE, PREMISES CONSIDERED, Plaintiff Justin Dewayne Wenckens respectfully requests that, upon final trial, judgment be entered in his favor and against Defendants Manuel Enriquez, Jr., Jeremiah Flores, Luis Perez, Raul Ortega, and David Rodriguez, and that Plaintiff be awarded actual and compensatory damages, punitive damages against Defendants in their individual capacities, costs of court, and all other relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: September 17, 2026

Respectfully submitted,

JUSTIN DEWAYNE WENCKENS
TDCJ ID NO. 02477197
H. H. Coffield Unit
2661 FM 2054
Tennessee Colony, Texas 75884

***Plaintiff Pro Se***

**Declaration of Justin Dewayne Wenckens**

1. My name is Justin Dewayne Wenckens. I am over 18 years of age, competent to make this Declaration, and have personal knowledge of the facts stated herein.

2. I am currently incarcerated in the custody of the Texas Department of Criminal Justice, TDCJ No. 02477197.

3. I have read the foregoing First Amended Complaint. I declare under penalty of perjury that the factual allegations contained therein that are within my personal knowledge are true and correct.

4. I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 17, 2026

JUSTIN DEWAYNE WENCKENS
TDCJ ID NO. 02477197
H. H. Coffield Unit
2661 FM 2054
Tennessee Colony, Texas 75884

## Certificate of Service

In accordance with the Federal Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing document has been served via USPS Priority Mail on the following counsel on September 17, 2026:

***Counsel for Defendants:***

**Ken Paxton**
Attorney General of Texas
**Brent Webster**
First Assistant Attorney General
**Ralph Molina**
Deputy First Assistant Attorney General
**Austin Kinghorn**
Deputy Attorney General for Civil Litigation
**Briana M. Webb**
Acting Division Chief
Law Enforcement Defense Division

**JORDAN GRUNDHOEFER**
Assistant Attorney General
Law Enforcement Defense Division
jordan.grundhoefer@oag.texas.gov
Law Enforcement Defense Division
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711

JUSTIN DEWAYNE WENCKENS
TDCJ ID NO. 02477197